A95A1770. MARTIN v. THE STATE.
(464 SE2d 872)

BEASLEY, Chief Judge.

A jury convicted Martin of aggravated assault (OCGA § 16-5-21), rape (OCGA § 16-6-1), and terroristic threats and acts (OCGA § 16-11-37). Martin enumerates 14 errors, primarily challenging the sufficiency of the evidence and the trial court's evidentiary rulings, none of which requires reversal.

Martin was a correctional officer at Bulloch County Correctional Institute ("BCCI"). The victim was a 19-year-old female with a tenth grade education. Her husband, an inmate, was on a work detail under Martin's supervision. When the victim visited her husband, Martin indicated to her he knew the right people to help get her husband released. The husband provided Martin with the couple's home telephone number because he trusted Martin, who reminded him of his own father. Martin called the victim several times, assuring that her husband would be released soon. During one conversation, Martin requested she meet him away from BCCI, at a location behind a certain grocery store. From there they drove to a motel supposedly to meet with influential officials, including the judge who had sentenced her husband. They waited about three hours until Martin announced that

apparently the officials were not coming.

Shortly after this incident, the victim's husband informed her that Martin told him that things were coming together and it seemed like he would be home soon. Martin again contacted the victim, asking that she meet him at the same parking lot at 7:30 p.m. Again they drove to the motel but did not stay. The victim believed they were going to meet people who could arrange her husband's release. That night at Martin's request and direction, she wrote in lipstick what appeared to be a series of blackmail notes. After driving to a secluded location, suddenly and without warning, Martin threatened her life and the life of her year-old boy and then sexually attacked her. He put a gun to her head and a knife to her throat. Attempting to resist, she tried to spray Martin with mace but he broke her finger, struck her in the face, beat her, and emptied the can of mace in her face. Martin also threatened to have her husband sent so far away she would not know his whereabouts, and he warned that he would make it appear as though she was blackmailing him.

A police officer encountered the victim in the grocery store parking lot at about 2:00 a.m. just after Martin dropped her off. Her hair was disheveled, her eyes were swollen as if she had been crying, and she attempted to conceal her lower lip. She rejected the officer's offer to help, appeared "nervous and scared," adamantly refused to tell him who hit her, and repeatedly said, "Please don't touch me." The officer considered the situation so abnormal that he called his sergeant, but the victim also refused the sergeant's offer of assistance.

Shortly after leaving the officers, the victim went to the sheriff's department in another county and reported the crimes to the sheriff, whom she knew. She was taken to a local hospital, and a rape kit was prepared. All the witnesses who saw her early that morning testified that she was terrified and had obvious injuries.

Martin testified that he was her victim, the sexual relationship was both consensual and mutual, and it had begun at her instigation and insistence. He claimed she had been blackmailing him, threatening to report him to the warden, and continually demanding money and conjugal visits with her husband. Martin testified that he paid her over $1,000 in cash and that she attempted to extort an additional $2,000 to "let me walk and leave me alone." He confirmed there had been a "tussle" but claimed they struggled over a tape recorder he had used to attempt to obtain incriminating statements from her.

1. In Martin's first three enumerations of error, he claims the verdict was contrary to the evidence, against the weight of the evidence, and contrary to the law and principles of justice and equity. Where the "general grounds" are raised, there is nothing for the appellate court to review except sufficiency of the evidence. *Towns v. State*, 185 Ga. App. 545 (365 SE2d 137) (1988).

The jury heard the victim describe in detail how she had been raped and how Martin had threatened her life and her child's life if she reported him to authorities. The victim's physical injuries were corroborated by numerous witnesses who testified on behalf of the State. Having reviewed the evidence in the light most favorable to the jury's determination, leaving evidence weight and witness credibility to the jury, a jury could have found the defendant guilty of the crimes for which he was convicted beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); *Witherspoon v. State*, 262 Ga. 2 (412 SE2d 829) (1992); *Crawford v. State*, 245 Ga. 89, 90 (263 SE2d 131) (1980); *Pardo v. State*, 215 Ga. App. 317 (1) (450 SE2d 440) (1994).

2. In his next three enumerations, Martin contends the evidence of similar transactions was improperly admitted.

(a) He claims the incident involving him and another young woman was not sufficiently similar as required by *Williams v. State*, 261 Ga. 640 (409 SE2d 649) (1991).

The State's evidence showed that in 1982, Martin tried to proposition 22-year-old Coleman when she came to visit her incarcerated brother, who was assigned to Martin's work detail. Coleman testified that Martin wanted to trade favors and told her he could make it hard or easy on her brother. In both the instant case and that one, Martin used his authority and position as a corrections officer with a young female to initiate a sexual relationship. He approached both females, called them at their homes, and propositioned them to meet at a local motel. The State moved to introduce the uncharged incident to show common scheme, motive, identity, and intent.

The three requirements of *Williams* were satisfied. Martin was the perpetrator in both instances, they were strikingly similar, and the independent episode tended to prove the facts it was offered for. Similar transactions need not be identical. *Sessions v. State*, 207 Ga. App. 609 (428 SE2d 652) (1993).

(b) Martin claims that the State's notice of its intent to introduce similar transactions violated USCR 31.1 because it was not timely, failed to meet the rule's specificity requirements, was not given prior to the jury being impaneled, and prejudiced Martin's right to a fair trial.

The jury was struck on September 9, 1992. On September 18, notice of the State's motion to allow evidence of similar transactions was served. A hearing was held on September 29, prior to the trial's start. This complied with the ten-day notice requirement. As to specificity, the notice was facially incomplete because it failed to state the date, county, and name of the victim as required by USCR 31.3 (B). However, the record shows that eight months earlier, the State provided Martin's attorney with the State's witness list, which included the

name and address of the proposed similar transaction victim, and a copy of her statement containing the basic facts that outlined her later testimony.

It is clear that Martin's counsel already had knowledge of the information missing from the notice — date(s), county, and name of victim. Coleman's statement is virtually identical to paragraph 2 A of the State's notice.[1] He also had notice of the State's intent to call Coleman as a witness. Martin's brief in support of his motion in limine, filed before the hearing, identifies the year of that incident in the earlier provided handwritten statement. In addition, Martin had subpoenaed Coleman as a witness and, prior to the similar transaction hearing, informed the court that she would be a defense witness.

A party seeking a reversal must show not only error, but injury arising from it. *Ga. Power Co. v. Bishop*, 162 Ga. App. 122, 126 (290 SE2d 328) (1982). Even though the USCR 31.1 notice was defective, Martin cannot show harm. However, we caution the State. Why risk reversal of a conviction for failure to follow the simple and straightforward rule requiring certain factual information? It is unprofessional, disobedient, and creates totally unnecessary legal issues.

(c) Martin claims the introduction of the four items belonging to Coleman and discovered in Martin's possession, when considered cumulatively with her trial testimony, improperly placed his character in issue because the evidence made Martin appear to be a thief.

Martin consented to a search of his car and was present with his attorney when police conducted their search and found items belonging to the victim and to Coleman. Investigators discovered the latter's date book, her driver's license, a credit card, and a receipt. The trial court determined that these items were found after Martin asked that the State search his vehicle and that these items were part of the res gestae, OCGA § 24-3-3. These items were still in Martin's car eight years after meeting Coleman. The fact that relevant evidence may indicate a crime or incidentally place a defendant's character in issue does not render it inadmissible. *O'Kelly v. State*, 196 Ga. App. 860, 861 (397 SE2d 197) (1990).

3. Martin contends the court erred by granting the State's motion in limine and precluding examination of an officer concerning photographs and intimate letters written by the victim to her husband while he was incarcerated at BCCI, as a way to attack the victim's credibility. He wanted to attempt to illustrate purported similarities between the vivid sexual descriptions the victim had depicted in her

---

[1] The notice stated, "Evidence of [sic] the defendant approached a female family member of an inmate incarcerated at Bulloch County Correctional Institute and offered drugs for sex and offered to look after the incarcerated family member in return for a relationship with the female relative."

letters and the victim's details of the lewd words ("talking dirty") and sexual activities of Martin. He claims the court deprived him of his right to show the jury that the victim was not a "sweet, innocent thing."

OCGA § 24-2-3, the Rape Shield Statute, excludes the very testimony Martin sought to introduce, unless the evidence "supports an inference that the accused could have reasonably believed that the complaining witness consented to the conduct complained of in the prosecution." OCGA § 24-2-3 (b). Because Martin failed to show a valid purpose for such evidence, it was properly excluded.

Martin's reliance on *Benton v. State*, 265 Ga. 648 (461 SE2d 202) (1995) is misplaced because *Benton* is factually distinguishable. Benton's conviction was reversed because the evidence showed that his accuser had alleged sexual misconduct against her former boyfriend, then later recanted. The Supreme Court determined it was error to withhold such evidence. Martin does not claim that the victim ever falsely accused anyone else or recanted.

4. Martin contends the court erred by not allowing him to question the victim concerning any pending criminal charges against her and by allowing non-pending criminal charges to be introduced against him. The State filed a motion in limine to exclude reference to any criminal activity of any witness, including the victim, unless the rules regarding impeachment were followed. The trial court sustained the State's objection to Martin's question to the victim concerning whether she had any pending criminal charges. Although a witness may be discredited by a conviction of a crime of moral turpitude, it is improper to discredit a witness by showing he has been arrested or indicted. *Syfrett v. State*, 210 Ga. App. 185, 187 (4) (435 SE2d 470) (1993).

Division 2 (c) addresses the evidence of four items belonging to Coleman and found in Martin's possession. Coleman's testimony clearly indicates she had no knowledge as to how these items came to be in Martin's possession, and she testified that she was not suggesting or stating that Martin ever did anything criminally wrong.

5. Martin claims he did not waive his right under OCGA § 17-10-2 to a presentence evaluation prior to sentencing. However, Martin's counsel stated, "Your Honor, I don't think there would be any purpose in requesting further delay for a presentence investigation . . . although I'd like to ask whether Mr. Martin has any reservations he would wish to ask the Court to delay in order that a presentence investigation report be made." None was expressed. The State made its argument and recommendation, followed by Martin's counsel who emphasized Martin's family and community ties. Martin then addressed the court on his own behalf. Accordingly, because of Martin's waiver, the court did not contravene OCGA § 17-10-2.

6. Martin claims that based on English common law, a jury has an absolute right to issue a "jury pardon" and that the jury should have been accordingly instructed even though there was evidence to support guilt. He cites no authority for the claim. We find no error.

7. Martin contends the court erred in its response to the jury's question in a note as to whether the jury could recommend mercy on a guilty verdict. The court informed the jury that it could recommend mercy but that the court was not bound by the request because the jury was not responsible for the sentence. The defense made no objection to the court's reply, and we find no error in it. Martin offers no support for his contention that the verdict was a compromise verdict or that the court's response lessened the jury's responsibility to find him guilty beyond a reasonable doubt.

8. Martin claims the court erred in denying his motion for a new trial based on newly discovered evidence, i.e., the testimony of Mr. Agnew, purporting to show that the victim and her husband attempted a similar scheme prior to this one and supporting Martin's claim he was framed.

During the motion for a new trial hearing, Agnew, a former fellow prison guard, testified that the victim's husband once offered to give him the telephone number of a woman about his age and suggested that Agnew might be able to arrange for the victim, her husband, the guard, and this woman to go off together on a weekend some time. Agnew claimed he had often wondered if the victim's husband had been attempting to set him up with his wife. Agnew also testified he thought Martin exhibited favoritism toward the victim's husband while Martin was supervising the work detail and that they appeared to be "real good friends." On cross-examination Agnew admitted he had worked with the victim's husband for only one day and conceded that the victim's husband never expressly offered him his wife. He also admitted the victim's husband had not done anything wrong and that he had not reported the proposal to authorities. He conceded that he knew that the sheriff's department conducted an investigation of the charges against Martin and that he did not contact anyone with his information.

For a new trial based on newly discovered evidence, the movant must satisfy the court: " '(1) that the evidence has come to his knowledge since the trial; (2) that it was not owing to the want of due diligence that he did not acquire it sooner; (3) that it is so material that it would probably produce a different verdict; (4) that it is not cumulative only; (5) that the affidavit of the witness himself should be procured or its absence accounted for; and (6) that a new trial will not be granted if the only effect of the evidence will be to impeach the credit of a witness.' [Cits.]" *Timberlake v. State*, 246 Ga. 488, 491 (271 SE2d 792) (1980). The absence of any one of these factors is sufficient

to deny a new trial. *Bell v. State*, 227 Ga. 800, 805 (183 SE2d 357) (1971). Agnew's testimony would do nothing more than seek to impeach the credibility of witnesses, and it is not so material it would produce a different verdict at trial. It was not error to deny a new trial.

9. Martin contends he was entitled to a jury instruction that where there are two theories, one consistent with guilt and one consistent with innocence, the jury must acquit. The "two theories" charge has been expressly disapproved by this Court. *Shutt v. State*, 215 Ga. App. 617 (451 SE2d 530) (1994). "It is a statement of law that " 'does not accurately state the principle addressed and should never be given.' *Cantrell v. State*, 212 Ga. App. 288, 290 (441 SE2d 879) (1994); *Johnson v. State*, 210 Ga. App. 99, 102 (435 SE2d 458) (1993)." *Williams v. State*, 217 Ga. App. 636, 637 (2) (458 SE2d 671) (1995).

10. Martin argues that the court erred in its charge concerning "terroristic threats and acts" because only "terroristic threats" were charged in the indictment, and by referring to both terroristic threats and acts, the court could have misled the jury.

Martin was indicted under OCGA § 16-11-37, "Terroristic Threats and Acts." The indictment alleged that Martin "did threaten to commit a crime of violence with the purpose of terrorizing another to-wit: did threaten to kill [the named victim]." The court's charge quoted verbatim the statutory language and also charged on the need for corroborative evidence.

The essential elements of terroristic threats and acts are: (1) a threat to commit any crime of violence . . . (2) . . . with the purpose of terrorizing another. . . . OCGA § 16-11-37. A conviction requires more than the uncorroborated testimony of the person to whom the threat is communicated. Id. An officer testified the victim appeared "nervous and scared." A doctor testified the victim was "frightened" and "disturbed." A nurse testified the victim was scared and "literally terrified." Another police officer testified that the victim was very afraid. The jury also heard the testimony of the sheriff, who testified that the victim was "scared to death" and that she had telephoned him on at least two occasions after she was attacked because "she feared for her life." " 'Slight circumstances may be sufficient for corroboration and the question of corroboration is one solely for the jury. If there is any evidence of corroboration, this court will not go behind the jury verdict and pass on its probative value. [Cit.]' " *Boone v. State*, 155 Ga. App. 937, 939 (274 SE2d 49) (1980).

Martin failed to show any confusion existed among the jurors, and there is evidence corroborating a threat against the victim. This enumeration is without merit.

*Judgment affirmed. Pope, P. J., and Ruffin, J., concur.*

DECIDED DECEMBER 1, 1995 —

D. Dustin Tapley, Jr., for appellant.

R. Joseph Martin III, District Attorney, Richard A. Mallard, Assistant District Attorney, for appellee.