[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 17-15565

_____

D.C. Docket No. 4:17-cr-00065-WTM-GRS-1


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

NAJEE OLIVER,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Georgia

_____

(June 18, 2020)

Before WILSON, JILL PRYOR, and TALLMAN,* Circuit Judges.

WILSON, Circuit Judge:

_____

* Honorable Richard C. Tallman, United States Circuit Judge for the Ninth Circuit, sitting
by designation.

The government filed a petition for panel rehearing of this court's opinion reversing Najee Oliver's sentence under the Armed Career Criminal Act (ACCA) and remanding to the district court for resentencing. After reviewing the petition, the record in this case, and the relevant case law, we grant the petition for rehearing, vacate our previous opinion, and substitute the following in lieu thereof.

\*      \*      \*

Oliver pled guilty to possessing a firearm and ammunition as a convicted felon under 18 U.S.C. §§ 922(g) and 924(a)(2). Based, in part, on his prior Georgia conviction for making terroristic threats under O.C.G.A. § 16-11-37(a) (2010), Oliver was sentenced under the ACCA to 180 months in prison. On appeal, Oliver argues that his prior conviction for making terroristic threats is not a predicate violent felony under the elements clause of the ACCA, 18 U.S.C. § 924(e)(2)(B)(i). We now conclude that § 16-11-37(a) is divisible under *Mathis v. United States*, 136 S. Ct. 2243, 2249 (2016), and that a threat to commit "any crime of violence" under Georgia law always includes an element requiring threatened violent force against another. Therefore, Oliver's terroristic-threats conviction qualifies as a violent felony under the ACCA's elements clause, and we affirm the district court.

2

## I.    Background

Late one evening, an officer from the Savannah-Chatham Metropolitan Police Department observed Oliver pulling on car door handles.  When the officer approached, Oliver fled, and the officer followed.  During the pursuit, Oliver threw a firearm and a bag over a fence into a nearby construction site.  Shortly after, the officer apprehended Oliver.  Police then investigated the construction site and recovered a loaded 9mm Glock pistol, which the police later determined was stolen in a residential burglary.  They also recovered the bag, which contained 45 grams of marijuana.

A federal grand jury indicted Oliver on three felony counts: possession of a firearm and ammunition by a convicted felon, in violation of §§ 922(g)(1) and 924(a)(2) (Count One); possession with intent to distribute a controlled substance, in violation of 21 U.S.C. § 841(a)(1) (Count Two); and using and carrying a firearm during and in relation to the drug trafficking offense charged in Count Two, in violation of 18 U.S.C. § 924(c)(1)(A)(i) (Count Three).  Oliver pled guilty to Count One pursuant to a written plea agreement, and the district court dismissed Counts Two and Three.

A probation officer prepared a presentence investigation report (PSI), which stated that Oliver qualified as an armed career criminal under the ACCA based on two prior convictions for possession with intent to distribute and his prior Georgia

conviction for making terroristic threats.[1]  Based on an offense level of 30 and a criminal history category of VI, his initial guideline range was 168–210 months' imprisonment.  But because Oliver qualified as an armed career criminal, the ACCA mandated a 15-year minimum sentence.  The guideline range was thus 180–210 months.

According to the PSI, the facts underlying Oliver's terroristic-threats conviction involved Oliver and his girlfriend, Jessica Badger.  After a disagreement, Oliver physically assaulted Badger outside of her residence.  Oliver told Badger that he possessed a firearm and would "shoot up [her] house."  He attempted to follow Badger into her house while wielding a gun.  When Badger and Asia Manigo—a witness—closed the door to prevent his entry, Oliver fired a single gunshot.  Police officers responded to a report of shots fired and met with Badger upon arriving at the scene; Oliver had departed.  Badger received a phone call from Oliver, which she placed on speaker for the officers to hear.  During the call, Oliver stated that Badger, her family members, and Manigo were "going to pay for this shit."  Based on these facts, Oliver pleaded guilty to three counts of terroristic threats under § 16-11-37(a).[2]

---

[1] The ACCA mandates a 15-year minimum sentence for a defendant who commits an offense in violation of § 922(g) and has three prior convictions for a violent felony or a serious drug offense.  18 U.S.C. § 924(e)(1).

[2] Oliver was additionally charged with two counts of aggravated assault, but these charges were nolle prossed.

At his sentencing in this case, Oliver objected to his armed-career-criminal status, arguing that his prior Georgia conviction for making terroristic threats did not qualify as a violent felony for purposes of the ACCA enhancement. The government argued that, based on *United States v. Greer* (*Greer I*), 440 F.3d 1267, 1273–74 (11th Cir. 2006), and the conduct underlying the offense, Oliver's conviction for making terroristic threats was a violent felony under the ACCA. The district court overruled Oliver's objection, applied the ACCA enhancement, and sentenced Oliver to 180 months' imprisonment.

## II.    Discussion

Oliver challenges the district court's determination that a conviction for making terroristic threats qualifies as a violent felony under the ACCA's elements clause. He first asserts that Georgia's terroristic-threats statute—which covers some conduct outside the ACCA's ambit—is indivisible and thus may not serve as an ACCA predicate. And he argues that, even if the statute is divisible, the portion of the statute under which he was convicted can be violated without the use, attempted use, or threatened use of physical force against the person of another. Specifically, he argues that the statute can be violated by threatening to commit "any crime of violence" against the person *or property* of another. Therefore, he asserts, Georgia's statute is overly broad and encompasses conduct that falls outside of the ACCA's definition of a violent felony.

5

We review de novo a district court's determination that a prior conviction qualifies as a violent felony under the ACCA. *United States v. Howard*, 742 F.3d 1334, 1341 (11th Cir. 2014).

## A. The ACCA's Elements Clause

The ACCA imposes a 15-year mandatory-minimum sentence on defendants who violate § 922(g) and have three prior convictions for "a violent felony or a serious drug offense, or both." 18 U.S.C. § 924(e)(1). Under the elements clause, the ACCA defines "violent felony" as any crime punishable by a term of imprisonment exceeding one year that "has as an element the use, attempted use, or threatened use of physical force against the person of another." *Id.* § 924(e)(2)(B)(i).

Under this provision, "use" requires active employment of physical force. *Leocal v. Ashcroft*, 543 U.S. 1, 9 (2004). The Supreme Court has clarified that "the phrase 'physical force' means *violent* force—that is, force capable of causing physical pain or injury to another person." *Johnson v. United States*, 559 U.S. 133, 140 (2010).

In determining whether a state conviction qualifies as a violent felony under the ACCA's elements clause, we employ a "categorical approach," examining only "the elements of the statute of conviction, not the specific conduct of a particular offender." *United States v. Davis*, 875 F.3d 592, 597 (11th Cir. 2017) (alteration

accepted) (internal quotation marks omitted).  Because an examination of the state conviction does not involve an analysis of its underlying facts, we must presume that the conviction rested upon the "least of the acts criminalized" by the statute. *Moncrieffe v. Holder*, 569 U.S. 184, 190–91 (2013) (alteration accepted) (internal quotation mark omitted).  If the "least of the acts criminalized" by the statute of conviction has an element requiring "the use, attempted use, or threatened use of physical force against the person of another," then the offense categorically qualifies as a violent felony under the ACCA's elements clause.  *Davis*, 875 F.3d at 597.  "If not, that is the end of our inquiry and the prior conviction does not count as a violent felony under the elements clause."  *Id.*

In a narrow range of cases, however, the statute of conviction is "divisible." A divisible statute "lists multiple, alternative elements," which "effectively creates several different . . . crimes."  *Descamps v. United States*, 570 U.S. 254, 263–64 (2013) (internal quotation mark omitted).  When a statute is divisible, we use the "modified categorical approach" to determine "which crime in the statute formed the basis of the defendant's conviction."  *Davis*, 875 F.3d at 597.  Under the modified categorical approach, we consider a limited class of documents, including the indictment, jury instructions, or plea agreement and colloquy, to determine which of the multiple crimes listed in the alternatively phrased statute the

defendant was convicted of committing. *Shepard v. United States*, 544 U.S. 13, 26 (2005).

Because the modified categorical approach "has no role to play" when a statute of conviction is indivisible, a court must first determine that the statute is divisible before applying the modified categorical approach. *Descamps*, 570 U.S. at 264. To be divisible, a statute must set out "one or more elements of the offense in the alternative—for example, stating that burglary involves entry into a building *or* an automobile." *Id.* at 257. Thus, for a statute to be divisible, the statutory phrases listed in the alternative must be elements, not means. *Mathis*, 136 S. Ct. at 2256. "'Elements' are the 'constituent parts' of a crime's legal definition—the things the 'prosecution must prove to sustain a conviction.'" *Id.* at 2248 (quoting *Black's Law Dictionary* 634 (10th ed. 2014)). "Means," by contrast, are merely "various factual ways of committing some component of the offense." *Id.* at 2249.

### B. The *Mathis* Framework

The Supreme Court in *Mathis* set forth a framework for determining whether an alternatively phrased statute sets forth elements or means. The Court instructed us to consult "authoritative sources of state law," including the language of the statute itself, pertinent state court decisions, and—if state law fails to provide clear answers—record documents from the defendant's own prior conviction. *Id.* at 2256.

8

First, the Supreme Court recognized that, in some instances, the divisibility of a statute can be determined by analyzing its language and structure. *Id.* For example, "if a statutory list is drafted to offer 'illustrative examples,' then it includes only a crime's means of commission." *Id.* We have interpreted the phrase "illustrative examples" to describe a statute that includes a non-exhaustive list of means by which a crime can be committed. *See Howard*, 742 F.3d at 1348. In *Howard*, we were tasked with determining whether Alabama's third-degree burglary statute was divisible so as to match the generic definition of burglary[3] under the ACCA. *Id.* Under Alabama law, "[a] person commits the crime of burglary in the third degree if he knowingly enters or remains unlawfully in a building with intent to commit a crime therein." *Id.* (quoting Ala. Code § 13A-7-7(a)). The statutory term "building" was defined as:

> Any structure which may be entered and utilized by persons for business, public use, lodging or the storage of goods, and such term includes any vehicle, aircraft or watercraft used for the lodging of persons or carrying on business therein, and such term includes any railroad box car or other rail equipment or trailer or tractor trailer or combination thereof.

*Id.* (quoting Ala. Code § 13A-7-1(2)). We noted that several items listed in the definition of "building" fell outside of the "building or structure" element of

---

[3] The elements of generic burglary under the ACCA are (1) "an unlawful or unprivileged entry into, or remaining in," (2) "a building or other structure," (3) "with intent to commit a crime." *Taylor v. United States*, 495 U.S. 575, 598 (1990).

generic burglary, such as vehicles and watercrafts. *Id.* We therefore had to determine whether the Alabama statute was divisible to achieve compatibility with generic burglary. *Id.* Because the Alabama statute contained a non-exhaustive list that provided mere illustrative examples of means by which to meet the statute's building element, we held that the statute was indivisible. *Id.* at 1348–49.

Second, *Mathis* provided that a state court decision may resolve the question of whether a statute lists elements or means. *Mathis*, 136 S. Ct. at 2256. In *Mathis*, the Court concluded that a state court decision holding that the alternatively listed items were "alternative methods of committing one offense, so that a jury need not agree" on a specific statutory alternative, "definitively answer[ed] the question." *Id.* (alteration accepted) (internal quotation mark omitted). "When a ruling of that kind exists," the Court stated, "a sentencing judge need only follow what it says." *Id.*

And third, if the text of the statute and state decisional law are unclear, "federal judges have another place to look: the record of a prior conviction itself." *Id.* For instance, the indictment and jury instructions in a particular case could simply reiterate all the alternative terms from the statute or use a single umbrella term to encompass all of those terms, which "is as clear an indication as any that each alternative is only a possible means of commission, not an element." *Id.* at 2257. On the other hand, "an indictment and jury instructions could indicate, by

10

referencing one alternative term to the exclusion of all others, that the statute contains a list of elements, each one of which goes toward a separate crime." *Id.*

With this framework in mind, we consider whether Georgia's terroristic-threats statute contains alternatively listed elements or means and, therefore, whether it is divisible.

### C. Applicability of *Greer I*

Before we analyze § 16-11-37(a) under *Mathis*, we address the government's argument that this case is controlled by *Greer I*.  In that case, we held that a determination of whether a Georgia terroristic-threats conviction qualifies as a violent felony under the ACCA is a question for the district court, not the jury.  The government contends that we already decided in *Greer I* that a Georgia terroristic-threats conviction qualifies as an ACCA predicate offense.  But because that was not our holding in *Greer I*, we conclude that it does not control this appeal.

In *Greer I*, we determined that the district court erred by refusing to impose an enhanced sentence under the ACCA based on its determination that "if anything beyond the conviction itself and the statutory elements had to be considered in making the violent crime finding, the Constitution requires that the jury make it." 440 F.3d at 1273.  We held that determining the nature of a prior conviction for ACCA purposes was a determination for a judge, not a jury, to make.  *Id.* at 1275.

11

To be sure, *Greer I* stated that "there was no real dispute" in the case as to whether Greer's indictments "proved that [his] three prior convictions were crimes of violence under the ACCA." *Id.* at 1273. However, in reaching our conclusion that this determination rests with the district court, we relied on the district court's characterization of the defendant's terroristic-threats convictions as violent felonies. *See id.* at 1273–74. And because the defendant in *Greer I* did not challenge this determination, we had no occasion to consider the issue further. Moreover, *Greer I*'s discussion about the substance of the ACCA determination was tangential to the primary issue in the case—specifically, if a district judge, instead of a jury, can decide whether a defendant's prior conviction is an ACCA predicate offense. *See id.* at 1273; *see also Aqua Log, Inc. v. Lost & Abandoned Pre-Cut Logs & Rafts of Logs*, 709 F.3d 1055, 1059 n.4 (11th Cir. 2013) ("A holding is both the result of the case and those portions of the opinion necessary to that result." (internal quotation mark omitted)).

Thus, we did not decide in *Greer I* the divisibility of Georgia's terroristic-threats statute. Further, *Greer I* did not explicitly address whether a Georgia terroristic-threats conviction qualifies as a violent felony under the ACCA's

12

enumerated-offense clause, elements clause, or residual clause.[4]  Therefore, we find that *Greer I* does not control here.[5]

### D. Divisibility of Georgia's Terroristic-Threats Statute

At the time of Oliver's conviction, Georgia's terroristic-threats statute provided:

> A person commits the offense of a terroristic threat when he or she threatens to commit any crime of violence, to release any hazardous substance, as such term is defined in [O.C.G.A. §] 12-8-92, or to burn or damage property with the purpose of terrorizing another or of causing the evacuation of a building, place of assembly, or facility of public transportation or otherwise causing serious public inconvenience or in reckless disregard of the risk of causing such terror or inconvenience.  No person shall be convicted under this subsection on the uncorroborated

---

[4] *Greer I* was decided prior to *Johnson v. United States*, 135 S. Ct. 2551 (2015).  In *Johnson*, the Supreme Court struck down as unconstitutionally vague the ACCA's "residual clause," which defined a violent felony, in part, as any crime punishable by a term of imprisonment exceeding one year that "otherwise involves conduct that presents a serious potential risk of physical injury to another."  *Id.* at 2555–58; 18 U.S.C. § 924(e)(2)(B)(ii).  Several other Supreme Court cases with precedential value in the ACCA context were also decided after *Greer I*, including *Descamps* and *Mathis*.

[5] The defendant in *Greer I* recently appealed the district court's denial of his 28 U.S.C. § 2255 motion to correct his sentence.  *See Greer v. United States* (*Greer II*), 749 F. App'x 887 (11th Cir. 2018) (unpublished).  He argued that his sentence under the ACCA was invalid because his prior Georgia terroristic-threats convictions did not qualify as violent felonies.  *Id.* at 888.  Because the parties agreed that the Georgia statute was divisible, we assumed the statute was divisible, but did not decide the question.  *Id.* at 892.  We concluded that only threatened violent force is criminalized under the "crime of violence" prong of Georgia's terroristic-threats statute.  *Id.* at 894–95.  The defendant's three prior terroristic-threats convictions therefore qualified as violent felonies under the ACCA's elements clause.  *Id.* at 895.  As with *Greer I*, we decline to give *Greer II* controlling weight.  *Greer II* is an unpublished decision and is not binding on our merits panel.  Moreover, *Greer II* leaves open the question of whether Georgia's terroristic-threats statute is divisible, which is an essential determination in this case.

testimony of the party to whom the threat is communicated.

O.C.G.A. § 16-11-37(a).  Thus, the statute lists three types of threats that qualify as a violation of the statute: (1) threats "to commit any crime of violence," (2) threats "to release any hazardous substance," and (3) threats "to burn or damage property."  *Id.*  Accordingly, Georgia's terroristic-threats statute sets forth an exhaustive list of threats that qualify under the statute.  Likewise, the lack of illustrative examples indicates that the Georgia statute contains divisible threat elements.  *See Mathis*, 136 S. Ct. at 2256; *cf. Howard*, 742 F.3d at 1348–49.

We then turn to Georgia case law.  However, no Georgia state-court decision "definitively answers the question" of whether § 16-11-37(a) lists elements or means with the certainty described in *Mathis*.[6]  *See* 136 S. Ct. at 2256.  Regardless, we have another place to turn—Oliver's record of conviction.

Oliver's state indictment indicates that the statute is divisible, as it states that he was charged only under the portion of the statute criminalizing a "threat[] to

---

[6] Nor does any Georgia state-court decision "necessarily imply" that the statute is divisible. *See Guillen v. U.S. Att'y Gen.*, 910 F.3d 1174, 1182–83 (11th Cir. 2018) (examining Florida state-court decisions holding that possession of separate drug substances during a single transaction constitutes separate violations of Florida's drug-possession statute, and concluding that the Florida court decisions "necessarily implie[d]" that the statute was divisible because "a defendant cannot be convicted and sentenced for two offenses with identical elements arising from the same facts").

commit any crime of violence . . . with the purpose of terrorizing another."[7] Exclusion of the other types of threats listed in § 16-11-37(a) thus shows that the statute contains a list of divisible elements in the form of alternative threats, each one of which constitutes a separate crime. *See Mathis*, 136 S. Ct. at 2257 ("[A]n indictment . . . could indicate, by referencing one alternative term to the exclusion of all others, that the statute contains a list of elements, each one of which goes toward a separate crime."). Accordingly, we conclude that the statute is divisible.

We therefore must employ the modified categorical approach to determine "which crime in the statute formed the basis of [Oliver's] conviction." *Davis*, 875 F.3d at 597. To make this determination, we may only examine a limited class of documents—known as *Shepard* documents—including the indictment, jury instructions, or plea agreement and colloquy. *Shepard*, 544 U.S. at 26. Here, the state indictment indicates that Oliver was charged under the divisible portion of § 16-11-37(a) that criminalizes a "threat[] to commit any crime of violence . . . with the purpose of terrorizing another." Therefore, we must now apply the categorical approach to determine "whether the least of the acts criminalized by that statutory phrase . . . includes the use, attempted use, or threatened use of

---

[7] We may take judicial notice of Oliver's state indictment, the contents of which are not in dispute. *See, e.g.*, *Francisco v. U.S. Att'y Gen.*, 884 F.3d 1120, 1123 n.2 (11th Cir. 2018).

physical force against another person, as required by the ACCA's elements

clause." *Davis*, 875 F.3d at 598.

### E. Categorical Analysis

The state must prove two essential elements to support a conviction for a

threat to commit "any crime of violence": (1) the defendant threatened to commit a

crime of violence against the victim, and (2) the defendant did so with the purpose

of terrorizing the victim. *Clement v. State*, 710 S.E.2d 590, 592 (Ga. Ct. App.

2011). We note that Georgia's choice of the phrase "threatens any crime of

violence" does not mean that this state law crime necessarily includes the

"threatened use of physical force" required by the ACCA. *See Johnson*, 559 U.S.

at 138 ("The meaning of 'physical force' in § 924(e)(2)(B)(i) is a question of

federal law, not state law."). Nowhere in Georgia's terroristic-threats statute,

pattern jury instructions, or related case law is the phrase "crime of violence"

defined. The Georgia Supreme Court determined that a definition was unnecessary

because a "person of ordinary intelligence can clearly understand the meaning of

threatening to commit any crime of violence." *Major v. State*, 800 S.E.2d 348, 352

(Ga. Ct. App. 2017). Georgia juries are therefore left to decide whether a

particular threat is a threat to commit "any crime of violence" based on their own

understanding of "violence" and without reference to whether the conduct at issue

amounts to an offense criminalized by the state. *See id.*

In the absence of a definition, we give the term "violence" its plain and ordinary meaning. *See id.* at 149 (noting that the rules of statutory construction require courts to "presume that the General Assembly meant what it said and said what it meant. To that end, [the court] must afford the statutory text its plain and ordinary meaning, . . . read[ing] the statutory text in its most natural and reasonable way . . . ."). Consistent with this approach, "violence," as generally defined, means "physical force so as to injure or damage." Violence, *Webster's New Twentieth Century Dictionary* 2040 (1st ed. 1976). This type of force is akin to the physical force required under the ACCA's elements clause, 18 U.S.C. § 924(e)(2)(B)(i).[8]  Oliver's terroristic-threats conviction under § 16-11-37(a) therefore qualifies as a violent felony under the ACCA's elements clause.

Oliver contends that a threat to commit any crime of violence cannot qualify under the elements clause because it can encompass threats against property. We disagree. The categorical approach "is not an invitation to apply 'legal imagination' to the state offense; there must be a realistic probability, not a theoretical possibility, that the State would apply its statute to conduct that falls outside" the ACCA's violent felony definition. *Moncrieffe*, 569 U.S. at 191 (internal quotation mark omitted). But Oliver does not provide, nor can we find, a

---

[8] The elements clause requires, in relevant part, that a crime have as an element the "threatened use of physical force," where "'physical force' means *violent* force—that is, force capable of causing physical pain or injury to another person." *Johnson*, 559 U.S. at 140.

case where Georgia applied a threat to commit "any crime of violence" to property alone. That is, we suspect, because a threat to property is covered under the divisible element criminalizing a threat to "burn or damage property." *See* O.C.G.A. § 16-11-37(a); *see also Corley v. United State*s, 556 U.S. 303, 314 (2009) ("A statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant." (alteration rejected)). To the contrary, all the cases Oliver relies upon involve an unequivocal threat to use violent force capable of causing pain or injury against the person of another. Oliver provides nothing to support his claim that Georgia's statute criminalizing a threat to commit any crime of violence has ever been, or realistically will be, applied in a manner that falls outside of the ACCA's violent felony definition.

## III.    Conclusion

We hold that Georgia's terroristic-threats statute, O.C.G.A. § 16-11-37(a) (2010), is divisible, and the threat that predicated Oliver's conviction—a threat "to commit any crime of violence"—requires the threatened use of violent force against another. Oliver's terroristic-threats conviction under Georgia law therefore qualifies as a violent felony under the ACCA's elements clause.

**AFFIRMED.**

18

TALLMAN, Circuit Judge, concurring in part and concurring in the judgment:

I join the court's opinion except as to its characterization of Georgia's state case law construing O.C.G.A. § 16-11-37(a). I write separately to emphasize that the court's cursory treatment of the state case law runs counter to the framework the Supreme Court instructed us to follow in *Mathis v. United States*, 136 S. Ct. 2243, 2256 (2016), and to our own subsequent cases. While I agree that *Mathis* controls the question of divisibility, I disagree with the court's conclusion that Georgia law does not definitively answer that question. As I demonstrate below, Georgia cases strongly support the conclusion that the statute is divisible.

I

Judge Wilson's opinion for the court aptly concludes that § 16-11-37(a)'s structure[1] and Oliver's underlying state-court indictment for making terroristic threats support finding the statute divisible. But the court errs by dismissing out-

---

[1] While I think my colleagues are right to conclude that § 16-11-37(a)'s structure indicates its divisibility, the discussion is strangely cursory in so concluding. *See* Court's Op. at 13–14. I would add to the analysis that § 16-11-37(a) looks like statutes we've held divisible— and *doesn't* look particularly like those we've said lay out "means" rather than "elements." *Compare United States v. Davis*, 875 F.3d 592, 598 (11th Cir. 2017) (statute that criminalizes two distinct forms of sexual assault is divisible), *with United States v. Howard*, 742 F.3d 1334, 1348 (11th Cir. 2014) (deeming indivisible a burglary statute which defined "structure" with a long list following "and such term includes"), *and Cintron v. U.S. Att'y Gen.*, 882 F.3d 1380, 1385–86 (11th Cir. 2018) (statue that lays out six means of drug trafficking is indivisible).

of-hand Georgia case law as inconclusive to the divisibility question. *See* Court's Op. at 14.[2]

The court's opinion apparently stakes its conclusion regarding Georgia case law on a false premise: that a state-court decision must "definitively" answer the question of divisibility, or else it is worthless. *See* Court's Op. at 14. That is wrong. True, the relevant state-court authority in *Mathis* happened to definitively answer the question of divisibility. *See* 136 S. Ct. at 2256. But the Court by no means mandated that state-court decisions must definitively speak to divisibility in order to be probative. And this court, employing the *Mathis* analysis, has relied on state-court decisions even if they do not speak so clearly as the one in *Mathis*. For instance, in *United States v. Gundy*, we concluded that the statute at issue was divisible after reviewing the indictments at issue in various state-court cases that the government and the defendant cited in their briefs. 842 F.3d 1156, 1167–68 (11th Cir. 2016). Even more recently, we relied on Florida state-court decisions that "necessarily imp[ied]" divisibility. *Guillen v. U.S. Att'y Gen.*, 910 F.3d 1174,

---

[2] The court also fails to meaningfully engage with Georgia case law and, thus, gives short shrift to one of the three factors *Mathis* compels us to consider. *See* 136 S. Ct. at 2256. *See also United States v. Golden*, 854 F.3d 1256, 1259 (11th Cir. 2017) (Jill Pryor, J., dissenting) (criticizing the majority, in an ACCA case, for overlooking the *Mathis* analysis's "critical analytical step" of considering state-court decisions to decide divisibility and failing to overturn circuit precedent committing the same error); *Howard*, 742 F.3d at 1346 ("Sentencing courts conducting divisibility analysis in this circuit are bound to follow any state court decisions that define or interpret the statute's substantive elements because state law is what the state supreme court says it is.").

1182–83 (11th Cir. 2018) (concluding that state-court decisions collectively illustrated that Florida courts sentenced defendants for separate crimes, distinguished by the type of drug possessed, which was "a clear enough indication that Florida's courts consider the identity of the particular substance to be an element"—not a means—of the crime "of possession").  A state-court decision can be a powerful indicator of divisibility, even if the decision does not say, "The statute is divisible."

Georgia state-court decisions readily illustrate that § 16-11-37(a) is divisible. First, they overwhelmingly demonstrate that Georgia prosecutors routinely charge defendants with separate crimes—requiring proof on different combinations of elements—under the terroristic-threats statute.  The most commonly prosecuted crime appears to be threatening to commit a crime of violence with the purpose of terrorizing another.  The indictments in all of the terroristic-threats cases accordingly "referenc[e] one alternative term" (threatening to commit a crime of violence) "to the exclusion of all others" (threatening to release any hazardous substance, or to burn or damage property), which tends to show the terroristic-threats statute "contains a list of *elements*, each one of which goes toward a

21

*separate crime.*"  *Mathis*, 136 S. Ct. at 2257 (emphases added).  Indictments so framed pervade Georgia case law.[3]

Second, Georgia case law shows that juries must determine whether the state has proven two elements (in the typical case, (1) the defendant's threat to commit a crime of violence (2) with the purpose of terrorizing another) beyond a reasonable doubt in order to convict for the particular crime charged.  *See, e.g.*, *Martin*, 303 Ga. App. at 119, 692 S.E.2d at 743 (finding the state presented "ample evidence to allow the jury to find the[] elements [of threatening a crime of violence, with the purpose of terrorizing another] beyond a reasonable doubt").  The component parts of the statute are therefore, by *Mathis*'s clear guidance, "elements" as opposed to

---

[3] *See, e.g.*, *Bryant v. State*, 832 S.E.2d 826, 830 (Ga. 2019) (indictment alleged defendant "threaten[ed] to commit Murder, a crime of violence, with the purpose of terrorizing" the victim); *Poole v. State*, 326 Ga. App. 243, 247, 756 S.E.2d 322, 328 (2014) (indictment charged three terroristic-threats counts, each of which "allege[d] that Poole, 'with the intent to terrorize,' threatened to commit a 'crime of violence' against a specific victim on a specific date or limited range of dates"); *Smith v. State*, 319 Ga. App. 640, 641, 738 S.E.2d 95, 96 (2013) (indictment "accused Smith of committing terroristic threats specifically by threatening to commit aggravated assault with the purpose of terrorizing the salon's owner and one of the customers"); *State v. Horsley*, 310 Ga. App. 324, 325, 714 S.E.2d 1, 2 (2011) (indictment charged defendants with "threaten[ing] to commit a crime of violence, to wit: murder with the purpose of terrorizing Sir Elton Hercules John"); *Martin v. State*, 303 Ga. App. 117, 119, 692 S.E.2d 741, 743 (2010) (indictment charged defendant with threatening to commit "a crime of violence, to wit: murder upon the person of Barbara Hightower"); *Martin v. State*, 219 Ga. App. 277, 283, 464 S.E.2d 872, 878 (1995) (indictment charged defendant with "threaten[ing] to commit a crime of violence with the purpose of terrorizing another").

22

"alternative methods" of committing one crime on which "a jury need not agree." 136 S. Ct. at 2256.[4]

Third, Georgia courts have expressly characterized the statute's component parts as "elements," different combinations of which give rise to multiple crimes under the statute.[5] The Georgia decisions in this way stand in stark contrast to the Iowa cases that *Mathis* considered, in which the courts consistently described

---

[4] The same principles apply in other cases for different crimes charged under the terroristic-threats statute. For instance, an indictment alleging a defendant committed the crime of threatening to burn down a victim's house will be charged only under the burn-or-damage element of § 16-11-37(a), to the exclusion of the other two *actus reus* elements. *See Armour v. State*, 265 Ga. App. 569, 571 n.4, 594 S.E.2d 765, 767 n.4 (2004). And the jury in a burn-or-damage case is tasked with considering only whether the government has carried its burden in proving the defendant threatened to burn or damage property with a criminal purpose. *See Robinson v. State*, 288 Ga. App. 219, 221, 653 S.E.2d 810, 813 (2007) (finding evidence sufficient to support defendant's conviction for threatening to burn down a restaurant); *see also Masson v. Slaton*, 320 F. Supp. 669, 672–73 (N.D. Ga. 1970) (explaining that, to charge a defendant under the terroristic-threats statute, "the court need only consider that portion of the statute under which the plaintiff was indicted"—the part criminalizing the threat "to burn or damage property, with the purpose of terrorizing another").

[5] *See Bryant*, 832 S.E.2d at 830–31 (explaining that, under § 16-11-37(a), "the State must establish *two elements* to sustain a conviction for making terroristic threats: (a) that the defendant threatened to commit a crime of violence against the victim, and (b) that the defendant did so with the purpose of terrorizing the victim" (internal quotation marks and citation omitted) (emphasis added)); *Clement v. State*, 309 Ga. App. 376, 379, 710 S.E.2d 590, 592 (2011) (same); *Poole*, 326 Ga. App. at 249, 756 S.E.2d at 329 ("[T]he *essential elements* of the crime of terroristic threats are a threat to commit a crime of violence with the purpose of terrorizing another." (emphasis added)); *Smith*, 319 Ga. App. at 641, 738 S.E.2d at 96 ("[T]he State was required to prove *two essential elements*: (1) that Smith threatened the victims with aggravated assault and (2) that he acted with the purpose of terrorizing them." (emphasis added)); *Martin*, 303 Ga. App. at 119, 692 S.E.2d at 743 ("[T]he State was required to prove *two elements*: (1) that Martin threatened to murder Barbara and (2) he did so with the purpose of terrorizing her." (emphasis added)); *Martin*, 219 Ga. App. at 283, 464 S.E.2d at 878 ("The *essential elements* of terroristic threats and acts are: (1) a threat to commit any crime of violence . . . (2) . . . with the purpose of terrorizing another." (emphasis added) (omissions in original)).

Iowa's burglary law as one offering "alternative method[s]" of committing a single offense. 136 S. Ct. at 2256.

Georgia's case law is a powerful indicator that § 16-11-37(a) creates multiple crimes. By failing to engage with the Georgia decisions, the court misses a chance to strengthen its holding, and jettisons an opportunity to clarify the appropriate analysis for future courts and litigants.

## II

O.C.G.A. § 16-11-37(a) is divisible, and Najee Oliver violated its crime-of-violence portion. That crime is categorically one of violence. The enhancement to Oliver's sentence under 18 U.S.C. § 924(e)(1) was therefore proper. I join the court's decision in so holding and its reasoning except as it pertains to the Georgia case-law portion of the *Mathis* framework.