[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 17-15495

_____

D.C. Docket No. 4:15-cr-00131-WTM-GRS-1

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

LEON CARTER,

Defendant - Appellant.

_____

Appeal from the United States District Court
for the Southern District of Georgia

_____

(August 3, 2021)

Before BLACK and MARCUS, Circuit Judges, and RESTANI,[*] Judge.

_____

[*] The Honorable Jane A. Restani, Judge for the United States Court of International Trade, sitting by designation.

MARCUS, Circuit Judge:

Leon Carter pleaded guilty to possessing a firearm after having previously been convicted of a felony in violation of 18 U.S.C. § 922(g)(1). The sentencing court concluded that one of Carter's previous convictions -- aggravated assault with a deadly weapon, O.C.G.A. § 16-5-21(a)(2) -- qualified as a "violent felony" within the meaning of the Armed Career Criminal Act's elements clause, 18 U.S.C. § 924(e)(2)(B)(i). Together with two previous drug-related convictions, this made Carter an armed career criminal subject to the Armed Career Criminal Act's fifteen-year mandatory minimum sentence for § 922(g)(1) violations. So, the district judge sentenced him to fifteen years.

But Carter was convicted of a version of Georgia aggravated assault that can be accomplished with a mens rea of recklessness -- aggravated assault with a deadly weapon under O.C.G.A. § 16-5-21(a)(2) based on a simple assault under O.C.G.A. § 16-5-20(a)(2). And as the Supreme Court recently clarified in Borden v. United States, the Armed Career Criminal Act's elements clause does not include offenses that criminalize reckless conduct; it covers only offenses that require a mens rea of knowledge or intent. 141 S. Ct. 1817, 1825 (2021). Indeed, we have expressly held that a Georgia aggravated assault of the sort Carter pleaded guilty to is not a violent felony under the elements clause. United States v. Moss, 920 F.3d 752, 759 (11th Cir. 2019), opinion reinstated, 2021 WL 3087754, at *1

2

(11th Cir. July 22, 2021) (en banc). Therefore, Carter's aggravated assault conviction cannot support his classification as an armed career criminal. We vacate Carter's sentence and remand for resentencing.

I.

We begin with the relevant background. On September 15, 1992, Kenneth Gibbons was driving down Augusta Avenue in Savannah, Georgia, when Leon Carter fired shots at him with a .22 caliber revolver. Carter fled to his home on a bicycle and was arrested. He pleaded guilty to a charge of aggravated assault under O.C.G.A. § 16-5-21 in Chatham County Superior Court in Savannah and received a three-year prison sentence. Carter was also caught participating in the sale of cocaine to undercover Savannah police personnel in 1996 and again in 2008; he pleaded guilty to sale of a controlled substance and to conspiracy to distribute a controlled substance, respectively. See O.C.G.A. § 16-13-30(b).

Years later, on December 11, 2013, Carter sold a Harrington & Richardson ("H&R") Model 732 .32 caliber revolver loaded with five rounds of ammunition to a Savannah individual for $100. Carter later sold the same individual an unloaded Springfield Armory, Model XD40, .40 caliber pistol for $300, and then an unloaded Norinco Model SKS, 7.62x39 caliber rifle for $400.

It turned out that Carter's gun buyer was working as a confidential informant for the Savannah-Chatham Metropolitan Police Department, which in turn was

working with the Bureau of Alcohol, Tobacco, Firearms and Explosives and the Federal Bureau of Investigation on a joint investigation into the illegal possession and distribution of firearms. Federal law makes it a crime for anyone who has previously been convicted of a crime punishable by more than one year in prison to possess a firearm or ammunition. 18 U.S.C. § 922(g)(1). So the United States sought, and a grand jury sitting in the Southern District of Georgia returned, an indictment charging Carter with two counts of violating § 922(g)(1) based on the H&R and Springfield sales. He pleaded guilty to the count based on the H&R sale.

The United States Probation Office prepared a presentence investigation report ("PSI"), which relied on Carter's aggravated assault conviction as well as his prior Georgia convictions for sale of a controlled substance and conspiracy to distribute a controlled substance to conclude that Carter qualified as an armed career criminal under 18 U.S.C. § 924(e). That provision, known as the Armed Career Criminal Act (the "ACCA"), imposes a fifteen-year mandatory minimum sentence for § 922(g) violations committed by individuals whose criminal records include at least three prior convictions for crimes that qualify as violent felonies or serious drug offenses. Therefore, Carter's Sentencing Guidelines range was the ACCA minimum: 180 months. Absent the ACCA minimum, Carter's Guidelines range would have been 135 to 168 months.

4

The district court agreed that Carter was an armed career criminal subject to the ACCA. Nevertheless, the court sentenced Carter to only 96 months in prison -- well below the ACCA's statutory mandatory minimum and well below the bottom of the otherwise applicable Guidelines range. The court explained that the downward variance was based on the factors found in 18 U.S.C. § 3553(a), which include the seriousness of the offense. The government knew about Carter's first illegal gun sale in December 2013, and it was apparent then that he was acting alone rather than participating in an illegal gun ring. In other words, by the end of 2013, the government had all the information it needed to arrest and prosecute Carter. But the government had waited until 2015 to indict him, and Carter had made two additional gun sales during the intervening period. These additional sales increased Carter's Guidelines range, but, the district court reasoned, there was no reason the government could not have "stopped" Carter before he had made the additional sales. To the district court, this sequence of events made Carter's offense less serious than the Guidelines range indicated.

Neither party objected to the sentence. But both appealed: Carter to argue that he should not have been classified as an armed career criminal because his previous convictions were not valid ACCA predicates and the government to argue that the district court had erred by imposing a sentence below the ACCA's fifteen-year mandatory minimum. United States v. Carter, 704 F. App'x 808, 809 (11th

Cir. 2017). Reviewing both issues only for plain error, a panel of this Court held that Carter could not establish plain error because he had not cited any Supreme Court or Eleventh Circuit cases holding that Georgia aggravated assault, sale of a controlled substance, or conspiracy to distribute a controlled substance did not qualify as an ACCA predicate offense. Id. The panel further held that the district court's dramatic downward variance from the ACCA mandatory minimum sentence posed "systemic problems to the fairness and integrity of . . . judicial proceedings" because it allowed for the imposition of disparate sentences on similarly situated defendants. Id. at 810. Thus, the panel vacated Carter's sentence and remanded to the district court for resentencing. Id.

On remand, Carter objected to the revised PSI's classification of his Georgia aggravated assault conviction as an ACCA predicate offense. But the district court ruled against him, agreeing with the government that this conviction qualified as a violent felony under the ACCA's elements clause. Thus, the district court sentenced Carter to fifteen years in prison, the ACCA mandatory minimum, with credit for time served. Carter appealed the district court's conclusion that his Georgia aggravated assault conviction was for a violent felony.

We stayed Carter's appeal pending our en banc Court's consideration of Moss, which was itself stayed pending the Supreme Court's decision in Borden. After the Supreme Court decided Borden, the en banc Court reinstated the panel

6

opinion in <u>Moss</u>, which held that Georgia aggravated assault with a deadly weapon, when premised on the version of simple assault outlined in O.C.G.A. § 16-5-20(a)(2), is not a violent felony under the ACCA's elements clause. <u>United States v. Moss</u>, No. 17-10473, 2021 WL 3087754, at *1 (11th Cir. July 22, 2021) (en banc).

## II.

This appeal presents a single issue: whether Carter's conviction for aggravated assault with a deadly weapon under O.C.G.A. §§ 16-5-21(a)(2) and 16-5-20(a)(2) qualifies as a "violent felony" under the Armed Career Criminal Act.[1] <u>Borden</u> and <u>Moss</u> yield the conclusion that it does not. Therefore, the district court was incorrect to classify Carter as an armed career criminal and to conclude that the ACCA's fifteen-year mandatory minimum controlled his sentence.

We recently set forth a controlling analysis of Georgia aggravated assault in <u>Moss</u>. Even so, now that <u>Borden</u> has confirmed the reasoning in <u>Moss</u>, we explain in some detail the ACCA analysis as it pertains to Carter's case. The ACCA defines a "violent felony" as:

> [A]ny crime punishable by imprisonment for a term exceeding one year . . . that --

---

[1] We review the question of whether a prior conviction qualifies as a violent felony de novo. <u>United States v. Deshazior</u>, 882 F.3d 1352, 1354 (11th Cir. 2018), <u>cert. denied</u>, 139 S. Ct. 1255 (2019).

(i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or

(ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another;

18 U.S.C. § 924(e)(2)(B). We often refer to subsection (i) as the "elements clause"; to the portion of subsection (ii) that refers to burglary, arson, extortion, and explosives as the "enumerated offenses clause"; and to the remainder of subsection (ii) as the "residual clause." The Supreme Court has held that the residual clause is unconstitutionally vague, Johnson v. United States, 576 U.S. 591, 597 (2015), and the enumerated offenses clause does not include aggravated assault. So Carter's aggravated assault conviction must qualify, if at all, under the elements clause.

To determine whether a prior conviction was a "violent felony" under the ACCA's elements clause, we apply the "categorical approach." United States v. Oliver, 962 F.3d 1311, 1316 (11th Cir. 2020); see also Descamps v. United States, 570 U.S. 254, 257 (2013). Under the categorical approach, we generally examine "only 'the elements of the statute of conviction, not the specific conduct of a particular offender.'" Oliver, 962 F.3d at 1316 (citation omitted). Thus, we assume that the conviction rested on the "'least of the acts criminalized' by the statute," because to determine upon which criminalized acts the conviction rested would violate the categorical approach's command not to analyze the facts

8

underlying the conviction.  Id. (citing Moncrieffe v. Holder, 569 U.S. 184, 190–91 (2013)).  Next, we determine whether the "least of the acts criminalized" has an element requiring "the use, attempted use, or threatened use of physical force against the person of another."  Id. (internal quotation marks omitted).  If it does, "the offense categorically qualifies as a violent felony under the ACCA's elements clause."  Id.  "If not, that is the end of [the court's] inquiry and the prior conviction does not count as a violent felony under the elements clause."  Id. (internal quotation marks omitted).

There is a twist, however, for statutes that are divisible -- that is, those that list multiple, alternative elements, and so effectively create "several different crimes."  Descamps, 570 U.S. at 263.  In order to determine which specific crime a defendant was convicted of committing, a court confronted with a divisible statute may consult Shepard documents, a "limited class of documents, including the indictment, jury instructions, or plea agreement and colloquy."  Oliver, 962 F.3d at 1317 (citing Shepard v. United States, 544 U.S. 13, 26 (2005)).

When Carter was convicted in 1992, Georgia's aggravated assault statute read:

> A person commits the offense of aggravated assault when he assaults:
>
> (1) With intent to murder, to rape, or to rob; [or]
>
> (2) With a deadly weapon or with any object, device, or instrument which, when used offensively against a person, is likely to or actually does result in serious bodily injury.

9

O.C.G.A. § 16-5-21(a) (1992).  Thus, two elements comprise a Georgia aggravated

assault: "(a) a simple assault as defined under O.C.G.A. §§ 16-5-20(a)(1) or (2),

and (b) that the assault was aggravated by either (1) an intention to murder, rape or

rob, or (2) the use of a deadly weapon."  Moss, 920 F.3d at 757.  In turn, in 1992,

Georgia's simple assault statute provided:

> (a) A person commits the offense of simple assault when he or she either:
>
>> (1) Attempts to commit a violent injury to the person of another; or
>>
>> (2) Commits an act which places another in reasonable apprehension of immediately receiving a violent injury.

O.C.G.A. § 16-5-20(a) (1992).

We have held that Georgia's aggravated assault statute is divisible as to both

the aggravator element, United States v. Morales-Alonso, 878 F.3d 1311, 1316

(11th Cir. 2018), and as to the type of simple assault committed, Moss, 920 F.3d at

757–58.  Therefore, we look to Shepard documents to determine which version of

aggravated assault served as the basis for Carter's guilty plea.  These show that

Carter was convicted of committing the version of aggravated assault found in

O.C.G.A. § 16-5-21(a)(2), simple assault committed with a deadly weapon: the

indictment charged Carter with "unlawfully mak[ing] an assault upon the person of

Kenneth Gibbons, with a .22 Long caliber revolver, a deadly weapon, by shooting

at Kenneth Gibbons."  But they do not reveal which version of simple assault was

the basis for Carter's conviction -- attempting to commit a violent injury under O.C.G.A. § 16-5-20(a)(1) or placing another in reasonable apprehension of receiving a violent injury under § 16-5-20(a)(2).  Therefore, "we assume that he was convicted under the 'least of the acts criminalized' by the statute—here, § 16-5-20(a)(2)," placing another in apprehension of receiving a violent injury.  Id. at 758 (citation omitted).

Stated more precisely, then, the question before us is whether a Georgia aggravated assault conviction for committing an act with a deadly weapon which places another in reasonable apprehension of immediately receiving a violent injury "has as an element the use, attempted use, or threatened use of physical force against the person of another."  18 U.S.C. § 924(e)(2)(B).  In Borden, the Supreme Court held that the phrase "use . . . against the person of another" in the ACCA's elements clause "sets out a mens rea requirement—of purposeful or knowing conduct."  Borden, 141 S. Ct. at 1828, 1829 n.6 (plurality opinion).  The elements clause "demands that the perpetrator direct his action at, or target, another individual."  Id. at 1825.  A crime that can be committed with a mens rea of mere recklessness therefore cannot qualify as a crime of violence under the elements clause -- "[r]eckless conduct is not aimed in [the] prescribed manner."  Id.; see also id. at 1833 ("'[A]gainst the person of another,' when modifying the 'use of

11

physical force,' introduces that action's conscious object. So it excludes conduct, like recklessness, that is not directed or targeted at another.") (citation omitted).

We held in Moss that when based on a simple assault under O.C.G.A. § 16-5-20(a)(2), an aggravated assault under O.C.G.A. § 16-5-21(a)(2) can be accomplished with a mens rea of recklessness. 920 F.3d at 758 (citing Patterson v. State, 789 S.E.2d 175, 176–78 (Ga. 2016)). As the Georgia Supreme Court explained in Patterson, "the crime of simple assault as set forth in O.C.G.A § 16-5-20(a)(2), does not require proof of specific intent. The State need only prove that the defendant intended to do the act that placed another in reasonable apprehension of immediate violent injury." 789 S.E.2d at 177 (citation omitted and cleaned up); see also Moss, 920 F.3d at 757 ("Georgia law defines recklessness as nothing more than the conscious disregard of a substantial and unjustifiable risk . . . [reckless conduct] cannot be said to require intent."). Nor does the deadly weapon aggravator element of a § 16-5-21(a)(2) aggravated assault conviction import a mens rea requirement greater than recklessness. Moss, 920 F.3d at 759 (citing Patterson, 789 S.E.2d at 176–78); see also Patterson v. State, 770 S.E.2d 62, 66 & n.5 (Ga. Ct. App. 2015) (rejecting the proposition that the deadly weapon or device likely to result or resulting in death aggravator in § 16-5-21(a)(2) requires an intent to injure and holding that this aggravator "does not change the type of intent necessary to prove . . . an O.C.G.A. § 16-5-20(a)(2) simple assault aggravated by

12

O.C.G.A. § 16-5-21(b)(2); rather, the crime only requires placing the victim in reasonable apprehension of harm by intentionally using the aggravating object") (citation omitted), aff'd, 789 S.E.2d 175 (Ga. 2016).

As we held in Moss, "[b]ecause Georgia's aggravated assault statute, O.C.G.A. § 16-5-21(a)(2) . . . can be satisfied by a [mens rea] of recklessness when based on simple assault under § 16-5-20(a)(2), it cannot qualify as a crime of violence under the elements clause of the ACCA." See Moss, 920 F.3d at 759. Borden affirmed this reasoning. See Moss, No. 17-10473, 2021 WL 3087754, at *1 (noting that Borden resolved all the issues for which the Eleventh Circuit granted rehearing en banc in Moss). Therefore, Carter did not have three ACCA predicate offenses, and the district court erred when it classified him as an armed career criminal subject to the ACCA's fifteen-year mandatory minimum.[2]

Accordingly, we **VACATE** the district court's sentence and **REMAND** for resentencing.

---

[2] Our conclusion in Carter's previous appeal that the district court did not plainly err in classifying him as an armed career criminal during his initial sentencing, Carter, 704 F. App'x at 809, is no obstacle to our holding today. The law-of-the-case doctrine does not apply when "controlling authority has been rendered that is contrary to the previous decision." Klay v. All Defendants, 389 F.3d 1191, 1198 (11th Cir. 2004). The Court's decision in Moss is controlling authority that is contrary to our previous decision.