[PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

————————————

No. 21-10763

————————————

ELVIS LEONEL MORFA DIAZ,

Plaintiff-Appellant,

*versus*

ALEJANDRO MAYORKAS, SECRETARY, DEPARTMENT OF HOMELAND SECURITY,
UR JADOU, DIRECTOR, U.S. CITIZENSHIP AND IMMIGRATION SERVICES,

Defendants-Appellees.

————————————

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 6:20-cv-01025-RBD-EJK

————————————

Before WILSON, BRANCH, and TJOFLAT, Circuit Judges.

BRANCH, Circuit Judge:

Elvis Morfa Diaz appeals the district court's dismissal with prejudice of his complaint challenging the United States Citizenship and Immigration Service's ("USCIS") denial of his naturalization application pursuant to 8 U.S.C. § 1421(c). The government denied his application because of Morfa Diaz's 1996 drug crime conviction in New York, which it found constituted an aggravated felony under the Immigration and Nationality Act ("INA"), 8 U.S.C. §§ 1101(f)(8), 1427(a), permanently rendering him ineligible for naturalization. Morfa Diaz claims that the district court's denial of his challenge to his administrative appeal was improper because his 1996 conviction did not categorically qualify as an aggravated felony. Rather, according to Morfa Diaz, New York's statute also criminalized human chorionic gonadotrophin ("hCG"), making it broader than the federal Controlled Substances Act, 21 U.S.C. § 801 *et seq.* In fact, however, New York did not add hCG to its controlled substances schedule until 2017, which Morfa Diaz conceded at oral argument. Hence, after careful consideration and with the benefit of oral argument, we affirm.

## I.    BACKGROUND

In 1996, two years into his lawful residency in the United States, Elvis Morfa Diaz, a citizen of the Dominican Republic, was convicted of the attempted sale of a controlled substance—

cocaine—in the third degree under New York Penal Law ("NYPL") § 220.39 for which he was sentenced to five years' probation.

Ostensibly, Morfa Diaz stayed out of trouble from that point on, and, in November 2018, he applied for naturalization with the USCIS. However, after concluding that Morfa Diaz's crime of conviction qualified as an aggravated felony, USCIS denied his application pursuant to 8 U.S.C. § 1427(a)(3) because he failed to establish good moral character, and his conviction precluded him from ever satisfying the moral character requirement for naturalization.[1]  *See* 8 U.S.C. § 1101(a)(43) (defining aggravated felonies to include "illicit trafficking in a controlled substance (as defined in [21 U.S.C. § 802]), including a drug trafficking crime (as defined in [18 U.S.C. § 924(c)])").

Morfa Diaz subsequently appealed USCIS's determination. Citing to the Second Circuit's decision in *Pascual v. Holder*, 723 F.3d 156 (2d Cir. 2013), which held that offers or attempts to sell cocaine in violation of NYPL § 220.39 qualify as aggravated felonies, USCIS denied his administrative appeal.

Undaunted, Morfa Diaz filed suit against the Secretary of the Department of Homeland Security and the Director of USCIS

---

[1] 8 U.S.C. § 1427(a) provides that "[n]o person . . . shall be naturalized unless such applicant . . . has been and still is a person of good moral character." Meanwhile, 8 U.S.C. § 1101(f)(8) establishes that "[n]o person shall be regarded as, or found to be, a person of good moral character who, during the period for which good moral character is required to be established, is, or was . . . one who at any time has been convicted of an aggravated felony . . . ."

under 8 U.S.C. § 1421(c) in the United States District Court for the Middle District of Florida, seeking to appeal the denial of his naturalization application.[2]  In response, USCIS filed a motion to dismiss Morfa Diaz's complaint, arguing that his 1996 aggravated felony conviction precluded him from establishing the requisite good moral character, forever shutting the door on his naturalization.  Morfa Diaz responded that although "the actual comparison should relate to the versions of the State and federal provisions in 1996, the year in which [he] was convicted," a cursory review of the New York drug schedules, NYPL § 3306, and the Controlled Substances Act, 8 U.S.C. § 812, in effect in *2020* revealed that New York criminalized the sale of numerous substances not covered under federal law, and was therefore not a categorical match.  He also caveated that he had not reviewed the Federal Register which, he recognized, could contain other substances prohibited by federal law.[3]  At any rate, according to Morfa Diaz, the statute's current potential—but, by his own admission, unconfirmed—overbreadth meant that his prior conviction could not qualify as an aggravated felony or necessarily preclude him

---

[2] Section 1421(c) permits a naturalization applicant to seek judicial review of the administrative decision.  8 U.S.C. § 1421(c).

[3] Although the district court did not pursue it, we note that Morfa Diaz's counsel's inexcusable efforts border on sanctionable conduct.  By failing to conduct the proper research—instead offering to "provide a further comparison of the schedules" only "if required"—counsel not only consciously and overtly presented a frivolous argument to the district court, but also muddied the record for a spurious challenge on appeal, too.

from showing good moral character.  In its reply, USCIS noted that Morfa Diaz cited exclusively to the 2020 version of § 220.39, not the version in effect at the time of his 1996 conviction.  Likewise, USCIS also pointed to the later federal regulation adding hCG to the Controlled Substances Act's list of prohibited substances, thus demonstrating the statutes' current congruence.

Agreeing with USCIS, the district court granted its motion to dismiss Morfa Diaz's complaint with prejudice.  Finding that the 1996 version of § 220.39 categorically matched the federal CSA, and that the corresponding federal offense to Morfa Diaz's state crime of conviction was also a drug trafficking, and therefore aggravated, felony, the district court concluded that Morfa Diaz was convicted of an aggravated felony within the INA's plain meaning, and that he was therefore precluded from establishing the requisite moral character for naturalization.

Morfa Diaz timely appealed.

## II.    STANDARD OF REVIEW

We review de novo a district court's grant of a motion to dismiss under Rule 12(b)(6), accepting the complaint's well pleaded factual allegations as true and construing them in the light most favorable to the plaintiff.  *See Baker Cnty. Med. Servs. v. U.S. Att'y Gen.*, 763 F.3d 1274, 1275 (11th Cir. 2014).  We also review *de novo* whether a crime of conviction is an aggravated felony under the INA.  *See Cintron v. U.S. Att'y Gen.*, 882 F.3d 1380, 1383 (11th Cir. 2018).

## III.    ANALYSIS

On appeal, Morfa Diaz raises two issues.  First, he argues that his conviction under § 220.39 is not an aggravated felony under the INA because, in 1996, New York Penal Law § 220.39 prohibited the sale of hCG, a substance not regulated by the relevant federal analogue, the CSA.  Second, Morfa Diaz maintains that § 220.39 is indivisible because it lists only one offense and that this Court must apply the categorical approach to determine whether a violation constitutes an "aggravated felony" within the INA's plain meaning.  And, according to Morfa-Diaz, that means that the least culpable conduct under § 220.39—the sale of controlled substances—could refer to the sale of hCG, therefore placing it outside of the INA"s "aggravated felony" definition.  He is wrong on both counts.

But before we explain why Morfa Diaz's challenges fail, we clarify an important fact: Morfa Diaz's arguments notwithstanding, at the time of his 1996 conviction, § 220.39 did not prohibit the sale of hCG.  *See* NYPL § 220.39 (McKinney 1996).  Because "[i]n assessing whether a[n alien's] conviction qualifies as an aggravated felony, we compare his offense of conviction to the CSA schedules in effect when he was convicted," we conduct our inquiry using the laws in effect in 1996, a comparison that Morfa Diaz's counsel deemed unnecessarily burdensome in proceedings below. *Gordon v. U.S. Att'y Gen.*, 962 F.3d 1344, 1351 n.4 (11th Cir. 2020).

A. *Divisibility*

The INA requires good moral character for naturalization, and a state conviction for an aggravated felony permanently disqualifies an applicant from a finding of good moral character. *See* 8 U.S.C. §§ 1101(f)(8), 1427(a)(3). In relevant part, federal law treats "illicit trafficking in a controlled substance (as defined in [21 U.S.C. § 802], including a drug trafficking crime (as defined in [18 U.S.C. § 921])" as an aggravated felony. 8 U.S.C. § 1101(a)(43)(B). Thus, to determine whether a state conviction qualifies as an aggravated felony under federal law, we "apply a categorical or modified categorical approach, depending on the statutory scheme." *Donawa v. U.S. Att'y Gen.*, 735 F.3d 1275, 1280 (11th Cir. 2013). When a statute is indivisible, or sets forth only a single offense, we apply the categorical approach, asking "whether the state statute defining the crime of conviction categorically fits within the generic federal definition of a corresponding aggravated felony." *Moncrieffe v. Holder*, 569 U.S. 184, 190 (2013) (quotations omitted). "[A] State offense is a categorical match . . . only if a conviction of the state offense necessarily involved facts equating to the generic federal offense." *Id.* (quotations omitted and alterations adopted). "Under the categorical approach, [we] must confine [our] consideration only to the fact of conviction and the statutory definition of the offense." *Donawa*, 735 F.3d at 1280.

On the other hand, if a statute is "divisible," or "lists multiple, alternative elements, and so effectively creates several different crimes," we instead "employ the 'modified categorical approach . . . to determine which alternative formed the basis of

the [alien's] prior conviction.'" *Cintron*, 882 F.3d at 1384 (quoting *Descamps v. United States*, 570 U.S. 254, 257 (2013)). Consulting "a limited class of documents, including the indictment, jury instructions, or plea agreement and colloquy, to determine which of the multiple crimes listed in the alternatively phrased statute the defendant was convicted of committing[,]" we then "compare that crime . . . with the relevant generic offense." *United States v. Oliver*, 962 F.3d 1311, 1317 (11th Cir. 2020); *Mathis v. United States*, 136 S. Ct. 2243, 2249 (2016).

When the legislature requires the government to charge and subsequently prove—or, alternatively, for a defendant to admit to—specific facts in order to sustain a conviction for a particular offense, those required facts are elements of the offense. *See Mathis*, 579 U.S. at 518. "Sometimes, though, what appear in a statute to be alternative elements . . . that either must be admitted to by a defendant or found by a fact-finder to sustain a conviction . . . are instead alternative 'means' of committing a single offense." *Cintron*, 882 F.3d at 1384 (quoting *Mathis*, 136 S. Ct. at 2248). "Unlike elements, 'means' . . . 'need neither be found by a jury nor admitted by a defendant[,]'" and if "a statute lists alternative means, any one of which would not constitute an aggravated felony, then the statute is indivisible and categorically cannot constitute a generic offense." *Id.* To differentiate between elements and means, we look to state law, starting with "the statute on its face" and state decisional law. *Mathis*, 136 S. Ct. at 2256. And, of course, "if the text of the statute and state decisional law are unclear,

'federal judges have another place to look: the record of a prior conviction itself.'" *Oliver*, 962 F.3d at 1318 (citing *Mathis*, 136 S. Ct. at 2256).

This "threshold inquiry [into divisibility] . . . is easy in . . . many" cases, especially when the statutory text facially resolves the question, or a state supreme court has definitively answered it. *Mathis*, 479 U.S. at 517–19. At bottom, an element is a statutory component that the legislature requires to be charged and proven at trial to sustain a conviction for a particular offense. *Id.* at 518. Likewise, "[i]f statutory alternatives carry different punishments, then under *Apprendi* [*v. New Jersey*, 530 U.S. 466, 490 (2000)] they must be elements." *Id.* at 518. However, "if a statutory list is drafted to offer illustrative examples, then it includes only a crime's means of commission." *Id.* (quotations omitted). As we have explained, "the phrase 'illustrative examples' . . . describe[s] a statute that includes a non-exhaustive list of means by which a crime can be committed." *Oliver*, 962 F.3d at 1317 (citing *United States v. Howard*, 742 F.3d 1334, 1348 (11th Cir. 2014)).

Our divisibility inquiry starts with the text. In 1996, New York Penal Law § 220.39 provided that:

> A person is guilty of criminal sale of a controlled substance in the third degree when he knowingly and unlawfully sells:
>
> 1. a narcotic drug; or
> 2. a stimulant, hallucinogen, hallucinogenic substance, or lysergic acid diethylamide and has

> previously been convicted of an offense defined in article two hundred twenty or the attempt or conspiracy to commit any such offense; or
> 3. a stimulant and the stimulant weighs one gram or more; or
> 4. lysergic acid diethylamide and the lysergic acid diethylamide weighs one milligram or more; or
> 5. a hallucinogen and the hallucinogen weighs twenty-five milligrams or more; or
> 6. a hallucinogenic substance and the hallucinogenic substance weighs one gram or more; or
> 7. one or more preparations, compounds, mixtures or substances containing methamphetamine, its salts, isomers or salts of isomers and the preparations, compounds, mixtures or substances are of an aggregate weight of one-eighth ounce or more; or
> 8. phencyclidine and the phencyclidine weighs two hundred fifty milligrams or more; or
> 9. a narcotic preparation to a person less than twenty-one years old.
> Criminal sale of a controlled substance in the third degree is a class B felony.

N.Y.P.L. § 220.39 (McKinney 1996).  Or, to sustain a conviction under § 220.39, a jury must find beyond a reasonable doubt that the defendant violated at least one of § 220.39's prongs, each requiring the knowing and unlawful sale of a certain amount of one or more specific prohibited substances.  *See id.*; *Mathis*, 136 S. Ct. at 2256.

Given that each of § 220.39's prongs lists specific combinations of controlled substances and weights, any one of which must be charged and proven to obtain a conviction, these nine statutory alternatives list separate elements, rather than separate means of committing a single offense.[4][5] *See Cintron*, 882 F.3d at 1384.

---

[4] Consequently, we agree with Morfa Diaz's claim that the district court erred by relying on the Second Circuit's decision in *Pascual v. Holder*, albeit for different reasons which offer no support for his position. In *Pascual*, the Second Circuit applied the categorical approach to determine whether NYPL § 220.39 violations qualify as aggravated felonies, implicitly holding that the statute is indivisible, in the process. *See* 707 F.3d at 405. Yet, the panel did not appear to consider the statute's divisibility. Regardless, as we have explained, § 220.39 lists separate elements, rather than means, thereby rendering the statute divisible. As a result, we find *Pascual* unpersuasive and inapposite to Morfa Diaz's appeal.

[5] Citing to *Mathis*, *Descamps*, *Moncrieffe*, and *Donawa* without analysis, Morfa Diaz contends that § 220.39 lists only a single offense and nine potential means of committing it. However, in proceedings below, Morfa Diaz cited the reasoning of a Second Circuit decision, *Harbin v. Sessions*, which the USCIS found inapposite before looking to *Pascual v. Holder*. Ironically, *Harbin*'s reasoning supports our conclusion regarding NYPL § 220.39's divisibility.

In *Harbin*, the Second Circuit found that the text of another of New York's drug trafficking laws, NYPL § 220.31, listed alternative means, rather than individual elements, and was therefore indivisible. 860 F.3d 58, 65–69 (2d Cir. 2011). We agree that § 220.31 is indivisible. And, in fact, comparing §§ 220.39 and 220.31 reveals crucial textual differences between the two statutes, emphasizing § 220.39's divisibility. Section 220.31 criminalized the

knowing and unlawful sale of "controlled substance[s]," defined by reference to New York's drug schedules. Section 220.31 provides that:

> A person is guilty of criminal sale of a controlled substance in the fifth degree when he knowingly and unlawfully sells a controlled substance. Criminal sale of a controlled substance in the fifth degree is a class D felony.

NYPL § 220.31. At the time, New York law defined a "controlled substance" as:

> any substance listed in schedule I, II, III, IV or V of section thirty-three hundred six of the public health law other than marihuana, but including concentrated cannabis as defined in paragraph (a) of subdivision four of section thirty-three hundred two of such law.

*Id.* § 220.35.

Hence, as the Second Circuit explained in *Harbin*, the "face of [§ 220.31] [] gives only one set of four elements: the defendant must (1) knowingly and (2) unlawfully (3) sell (4) a controlled substance." *Harbin*, 860 F.3d at 65. As a result, the court found that "the text does not suggest that a jury must agree on the particular substance sold. If some jurors believed that a defendant had sold cocaine, and others believed that he had sold heroin, they could still agree that he had sold a 'controlled substance,' and issue a guilty verdict" pursuant to § 220.31. *Id.* In other words, NYPL § 220.31 provides "a non-exhaustive list of means by which" a defendant may commit its substantive offense, rather than alternative elements that the government must prove beyond a reasonable doubt at trial, and is therefore indivisible. *Oliver*, 962 F.3d at 1317 (citing *Howard*, 742 F.3d at 1348).

In contrast, the text of § 220.39 requires proof of the substance and amount sold to sustain a conviction under any of its nine prongs, and, therefore, it lists separate elements of nine unique controlled substance offenses. *See* NYPL § 220.39. Accordingly,  the text of § 220.39 identifies "which things must be charged" to sustain a conviction rather than a mere list

### B.  The Modified Categorical Approach

Because we hold that § 220.39 is divisible, to conclude whether Morfa Diaz was convicted of an aggravated felony, we apply the modified categorical approach, "consider[ing] a limited class of documents, including the indictment, jury instructions, or plea agreement and colloquy, to determine" the element of § 220.39 under which Morfa-Diaz was convicted.  *Oliver*, 962 F.3d at 1317.  To that end, Morfa Diaz's indictment clarifies that he was charged with selling a "narcotic drug," specifically cocaine, to an undercover police officer.  Based on the government's proffer of a March 2017 judicial order referring to Diaz's guilty plea to the "attempted criminal sale of a controlled substance in the third degree (Penal Law §§ 110/220.39[1])," we conclude that Morfa Diaz was charged and convicted under § 220.39(1). *Accord Shepard v. United States*, 544 U.S. 13, 26 (2005) (authorizing courts to look at a "comparable judicial record" to determine the crime of conviction).

Next, we determine whether Morfa Diaz's 1996 conviction under § 220.39(1) categorically qualifies as an "aggravated felony" under the INA.  *Oliver*, 962 F.3d at 1317.  In relevant part, the INA defines an "aggravated felony" to include "a drug trafficking crime (as defined in section 924(c) of Title 18)."  8 U.S.C. § 1101(a)(43)(B).

---

of means, and we therefore hold that the statute lists elements and is divisible. *Mathis*, 579 U.S. at 518.

Section 924(c)(2), in turn, defines a "drug trafficking crime" to include "any felony punishable under the [CSA]." Thus, Morfa Diaz's conviction qualifies if § 220.39(1) "necessarily proscribe[s] conduct that is an offense under the CSA," and the CSA "necessarily prescribe[s] felony punishment for that conduct." *Moncrieffe*, 569 U.S. at 192.

Again, § 220.39(1) prohibits the knowing and unlawful sale of any "narcotic drug," and § 220.00(7) defines a "narcotic drug" as "any controlled substance listed in schedule I(b), I(c), II(b) or II(c) other than methadone," which, in turn, include cocaine. *See* NYPL § 3306. Likewise, under the CSA, distribution of cocaine carries a sentence of up to 20 years in prison, rendering it a felony drug trafficking offense, and therefore an aggravated felony. 21 U.S.C. § 841(a), (b)(1)(c). Indeed, even the least culpable conduct under § 220.39(1), the attempted sale of a controlled substance, violates 8 U.S.C. § 841(a)(1)'s prohibition on the distribution of a controlled substance. *See* NYPL § 220.39(1); 8 U.S.C. § 841(a)(1). Hence, even if Morfa Diaz only offered to sell the officer cocaine, his state offense would qualify as a drug trafficking felony at the federal level, rendering it an aggravated felony under the INA. *See* 21 U.S.C. §§ 841(b)

Consequently, because we conclude that Morfa Diaz's 1996 conviction under § 220.39(1) qualifies as an aggravated felony, he cannot satisfy the good moral character requirement necessary for naturalization, either. *See* 8 U.S.C. §§ 1101(f)(8), 1427(a). Thus, the

district court did not err in dismissing his complaint with prejudice.[6]

_____

[6] Although we hold that § 220.39 is divisible, Morfa Diaz would still not prevail if we held that New York's statute is indivisible and applied the categorical approach. "Under the categorical approach, [we] must confine [our] consideration only to the fact of conviction and the statutory definition of the offense." *Donawa*, 735 F.3d at 1280. Hence, For a § 220.39 offense to constitute an aggravated felony, it must "necessarily involve[] facts equating to the generic federal offense" under the Controlled Substances Act. *Moncrieffe*, 569 U.S. at 192. We find that it does. In 1996, § 220.39 prohibited the knowing and unlawful sale of a "narcotic drug," "narcotic preparation," "stimulant," "hallucinogen" "hallucinogenic substance," "lysergic acid diethylamide," "phencyclidine," or "methamphetamine." NYPL § 220.39 (McKinney 1996). At the time, New York Schedules I(d)(12), I(e)(3), and II(d)(2) defined lysergic acid diethylamide, phencyclidine, and methamphetamine, respectively. *See* N.Y. Pub. Health Law § 3306 (McKinney 1996). Likewise, with the exception of methadone, substances in New York Schedules I(b), I(c), II(b), and II(c) constituted narcotic drugs, and substances in Schedules III(d) and III(e) contained narcotic preparations. NYPL § 220.00(7)-(8). Schedules I(d)(5), (18), (19), (20), (21), and (22) listed hallucinogens, and all substances in Schedule I(d) except for concentrated cannabis, lysergic acid diethylamide and other scheduled hallucinogens were classified as hallucinogenic substances. *Id.* § 220.00(9)-(10). Finally, substances found in Schedules I(f) and II(d) were defined as stimulants. *Id.* § 220.00(11).

At the same time, the federal Controlled Substances Act proscribed "knowingly or intentionally . . . distribut[ing], or dispens[ing] . . . a controlled substance," as well as "attempting or conspiring" to commit the offense. 21 U.S.C. §§ 841(a)(1), 846. The Controlled Substances Act defined a "controlled substance" as "a drug or other substance, or immediate precursor, included in schedule I, II, III, IV, or V of part B" of chapter. § 802(6). Those federal schedules encompass all of the substances prohibited under the 1996 version

## IV.    CONCLUSION

Because Morfa Diaz's 1996 conviction under § 220.39(1) qualifies as an aggravated felony within the plain meaning of the INA, we affirm the district court's grant of the government's motion to dismiss his complaint with prejudice.

**AFFIRMED.**

---

of NYPL § 220.39.  *Compare* N.Y. Pub. Health L. § 3306 *with* 21 C.F.R. §§ 1308.11, 1308.12, 1308.13 (1996).  With the exception of phencyclidine—listed in New York Schedule I and federal Schedule II—every substance prohibited by the New York schedule corresponded to the identically enumerated federal schedule.  Consequently, an offense under § 220.39 constituted an offense punishable under the Controlled Substances Act, as well.

Moreover, the Controlled Substances Act prescribed felony punishment for the knowing and unlawful sale of any of those proscribed substances.  21 U.S.C. §§ 841(b)(3)-(4) (limiting misdemeanor punishment to cases involving Schedule V substances or involving the "distributi[on of] a small amount of marihuana for no renumeration.").  Therefore, Morfa Diaz's state crime of conviction is categorically an aggravated felony within the meaning of the INA, permanently precluding him from establishing eligibility for naturalization.

21-10763                WILSON, J., Concurring                1

WILSON, Circuit Judge, concurring:

I concur in the result.