[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 20-12609

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

BENJAMIN SMITH,

Defendant-Appellant.

_____

Appeals from the United States District Court
for the Northern District of Georgia
D.C. Docket No. 1:18-cr-00305-ELR-CMS-1

_____

—————————————

No. 20-12773

—————————————

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

BENJAMIN SMITH,

Defendant-Appellant.

—————————————

Appeals from the United States District Court
for the Northern District of Georgia
D.C. Docket No. 1:18-cr-00305-ELR-CMS-1

—————————————

Before JILL PRYOR, BRANCH, and ED CARNES, Circuit Judges.

PER CURIAM:

In 2018, Benjamin Smith, a prior convicted felon, was arrested on an outstanding warrant. At the time of his arrest, he had a firearm in his possession. As a result, a grand jury indicted him for possession of a firearm by a convicted felon, in violation of

20-12609                Opinion of the Court                3

18 U.S.C. §§ 922(g) and 924(e).  A jury convicted Smith as charged, and the district court sentenced him as an armed career criminal under the Armed Career Criminal Act ("ACCA") to 235 months' imprisonment followed by three years' supervised release.

The main issue we must address in this appeal is whether the district court erred in concluding that Smith's prior Georgia convictions for aggravated assault with intent to rob, aggravated assault, and criminal attempt to commit armed robbery qualify as violent felonies for purposes of the ACCA.  Additionally, we address Smith's arguments that (1) the district court erred in denying Smith's motion for a new trial; (2) the government committed prosecutorial misconduct by misstating the law during closing argument; (3) the district court abused its discretion in denying Smith's counsel's motion to withdraw; and (4) the district court erred in enhancing Smith's sentence under the ACCA without submitting his prior convictions to the jury.  After review and with the benefit of oral argument, we conclude that Smith's convictions for Georgia aggravated assault with intent to rob, Georgia aggravated assault, and Georgia criminal attempt to commit armed robbery do not qualify as violent felony predicates for purposes of the ACCA enhancement.  Because Smith does not have three qualifying predicate convictions, the ACCA enhancement cannot stand.  Therefore, we vacate Smith's sentence and remand for resentencing.  We affirm as to the other issues.

## I.    Background

In August 2018, a grand jury in the Northern District of Georgia indicted Smith on one count of possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g).  Prior to trial, Smith filed a motion *in limine*, seeking to exclude details of his prior convictions at trial and seeking redaction of these prior convictions from the indictment.  He offered to stipulate that prior to the instant charged offense, he had sustained a felony conviction.  The district court granted his motion and accepted the parties' stipulation.  Smith's trial began in February 2019, but the district court declared a mistrial due to improper prejudicial testimony from the State's first witness.

In May 2019, between the mistrial and the retrial, the government obtained a superseding indictment.  The superseding indictment alleged as follows:

> On or about April 27, 2018, in the Northern District of Georgia, the defendant, BENJAMIN SMITH, knowing that he had been previously convicted of at least one of the following offenses:
>
> (1) Theft By Shoplifting, on or about April 6, 1998, in Fulton County Superior Court, Atlanta, Georgia;
>
> (2) Aggravated Assault, on or about January 4, 1999, in Fulton County Superior Court, Atlanta, Georgia;

> (3) Aggravated Assault, on or about February 6, 2009, in Fulton County Superior Court, Atlanta, Georgia; and
>
> (4) Possession of a Firearm by a Convicted Felon, on or about March 23, 2010, in Fulton County Superior Court, Atlanta, Georgia;

each of which was a crime punishable by imprisonment for a term exceeding one year, did knowingly possess the following firearm in and affecting interstate and foreign commerce: a Smith and Wesson, .38 caliber revolver, in violation of Title 18, United States Code, Sections 922(g)(1) and 924(e)(1).

Smith filed a motion to strike the language in the superseding indictment that he knew that he had been previously convicted of a felony. He acknowledged that the government added this language in anticipation of the Supreme Court's decision in the then-pending case *Rehaif v. United States*, which presented the question of whether knowledge of one's prohibited status was an element of a § 922(g) offense. However, because *Rehaif* was still pending, Smith argued that the knowledge of status language should be struck as *mens rea* about one's status was not an element of the offense. The district court granted Smith's motion and struck the challenged language from the indictment, finding that *mens rea* of one's status was not an element of the offense.

6                    Opinion of the Court                    20-12609

At trial, officers with the Atlanta Police Department's ("APD") Fugitive Unit testified that in April 2018, a warrant issued for Smith on an unrelated matter.  The officers learned that Smith was a mobile mechanic and arranged a meeting with Smith near a local AutoZone under the guise of a needed car repair.  Officers in unmarked vehicles went to the designated location to meet Smith on April 27, 2018.  The officers pulled into the parking lot and approached Smith wearing tactical vests bearing the words "Atlanta Police Department," announced that they were APD, and instructed Smith to get on the ground.  Smith's girlfriend was inside Smith's vehicle in the passenger seat.  Smith attempted to flee in his vehicle, but he was blocked in.  Smith exited his vehicle and attempted to "grab a gun with a sock on it"[1] from his waistband.  Smith then dropped to one knee and tossed the gun under his vehicle.  After a brief struggle, the officers took Smith into custody and seized the gun.

In his defense, Smith's counsel argued that Smith did not know where the gun under his car came from and that he did not possess a gun.[2]  In support, Smith's counsel presented testimony from the AutoZone manager where Smith was arrested that the area experienced frequent crime and people often loitered and dumped items in the parking lot.

---

[1] Officers described the gun as being in a "dirty sock" with "the barrel sticking out of it."

[2] Smith did not testify in his defense.

20-12609                Opinion of the Court                7

The parties stipulated that Smith had been previously convicted of a felony. The government also introduced, over Smith's objections, certified copies of Smith's prior conviction for possession of a firearm by a convicted felon, in violation of Georgia law. The district court instructed the jury that the prior conviction was not to be used to determine whether Smith was guilty of the present charged offense, and was

> admitted and may be considered . . . for the limited purpose of assisting [the jury] in determining whether the defendant had the state of mind or intent necessary to commit the crime charged in the indictment, the defendant acted according to a plan or in preparation to commit a crime, or the defendant committed the acts charged in the indictment by accident or mistake.

The government then called Smith's parole and probation officer, who testified that Smith was released on parole on March 30, 2011, for his Georgia conviction for possession of a firearm by a convicted felon. After the close of the evidence, the jury found Smith guilty as charged.[3]

Sixteen days after the guilty verdict, the Supreme Court held in *Rehaif* that to convict a defendant of violating § 922(g), "the

---

[3] For the first time on appeal, Smith takes issue with the government's closing argument. We discuss the closing argument at issue in greater detail below when addressing Smith's claim.

Government must prove both that the defendant knew he possessed a firearm and that he knew he belonged to the relevant category of persons barred from possessing a firearm." *Rehaif v. United States*, 588 U.S.__, 139 S. Ct. 2191, 2200 (2019). Smith filed a motion for a new trial, arguing that, in light of *Rehaif*, a new trial was warranted because the jury was not instructed on an essential element of the offense and the evidence was insufficient to sustain his conviction. The government opposed the motion, noting that it attempted to add knowledge of Smith's felon status to the superseding indictment and introduce evidence on this point, but Smith successfully opposed its efforts—thus, inviting the error. Alternatively, the government argued that there was sufficient evidence to prove Smith knew of his felon status at the time he possessed the firearm in question.

The district court denied the motion for a new trial. It concluded that (1) "there [was] an abundance of evidence demonstrating that [Smith] was well aware of his felony status at the time he possessed a gun"—including that prior to that date, he had pleaded guilty in two cases to the charge of possession of a firearm by a convicted felon; and (2) "based on [Smith's] own argument to redact language indicating his knowledge of his felony status, the interest of justice would dictate that [he] not be permitted to now benefit from the [c]ourt's ruling in his favor."

20-12609                Opinion of the Court                9

Prior to sentencing,[4] the United States Probation Office prepared a presentence investigation report ("PSI"), which indicated, in relevant part, that Smith was subject to the ACCA sentencing enhancement because he had at least three prior unspecified convictions for a violent felony or a serious drug offense.[5]  Smith objected to the enhancement, arguing that he did not have three qualifying violent felony convictions.

In response, the government argued that Smith had five potentially qualifying ACCA violent felony predicate convictions (all from Georgia): (1) a 1999 conviction for aggravated assault; (2) a 2009 conviction for aggravated assault with intent to rob; (3) a 2009 conviction for criminal attempt to commit armed robbery; (4) a 2010 conviction for obstruction of a law enforcement officer; and (5) a 2014 conviction for obstruction of law enforcement.

---

[4] Smith's court-appointed counsel moved to withdraw, and Smith filed a *pro se* motion supporting the motion to withdraw and requesting appointment of new counsel prior to sentencing.  The district court denied the motions following two hearings.  We discuss these motions and the district court's rulings in more detail below when addressing Smith's challenge to the denial of these motions.

[5] At the time of Smith's conviction, a violation of § 922(g) carried a statutory maximum of ten years' imprisonment.  18 U.S.C. § 924(a)(2) (2019).  The ACCA, however, mandated a minimum 15-year sentence if a defendant convicted of a § 922(g) offense has three or more prior convictions for a "violent felony" and/or "a serious drug offense."  *Id.* § 924(e)(1).

At sentencing, the district court overruled Smith's objection to the ACCA enhancement and found that Smith, "based on his priors, [was] an armed career criminal." The district court did not elaborate on its reasoning or explain on which of Smith's prior convictions it relied. The district court sentenced Smith to 235 months' imprisonment to be followed by three years' supervised release. This appeal followed.

## II.    Discussion

Smith raises five issues on appeal: (1) the district court erred in denying his motion for a new trial based on *Rehaif*; (2) the government committed prosecutorial misconduct by misstating the law during closing argument; (3) the district court abused its discretion in denying Smith's counsel's motion to withdraw and appoint new counsel for the sentencing phase; (4) the district court erred in imposing the ACCA sentencing enhancement; and (5) the district court erred in enhancing Smith's sentence under the ACCA without submitting his prior convictions to the jury. We address each argument in turn.

### A.  Denial of Smith's Motion for a New Trial

Smith argues that the district court erred in denying his motion for a new trial based on the Supreme Court's intervening decision in *Rehaif*, which held that knowledge of one's prohibited status is an element of a § 922(g) offense that the government must prove beyond a reasonable doubt. 139 S. Ct. at 2200. He maintains that a new trial is warranted because the district court did not

instruct the jury on the knowledge of status element and there was insufficient evidence to prove his knowledge of his status.

We review the district court's denial of a motion for a new trial for abuse of discretion. *United States v. Jeri*, 869 F.3d 1247, 1259 (11th Cir. 2017). "In evaluating whether specific trial errors warrant a new trial, we apply the harmless-error standard found in Fed. R. Civ. P. 61." *Id.* Under that rule, "a new trial is warranted only where the error has caused substantial prejudice to the affected party (or, stated somewhat differently, affected the party's substantial rights or resulted in substantial injustice)." *Id.* (quotation omitted).

Under § 922(g)(1), it is "unlawful" for anyone "who has been convicted in any court of . . . a crime punishable by imprisonment for a term exceeding one year" to possess a firearm, and an individual who "knowingly" does so is subject to punishment by fine or imprisonment. 18 U.S.C. §§ 922(g)(1), 924(a)(2).[6] In *Rehaif*, the Supreme Court held that a "prosecution under 18 U.S.C. § 922(g) and § 924(a)(2) [requires] the Government [to] prove both that the defendant knew he possessed a firearm and that he knew

---

[6] At the time of Smith's conviction, the penalty for violating § 922(g) was codified in § 924(a)(2). *See* 18 U.S.C. § 924(a)(2) (2019). In 2022, however, Congress amended § 924, and the penalty for violating § 922(g) is now codified in § 924(a)(8). *See* 18 U.S.C. § 924(a)(8) (2022). For ease of reference, we refer to the statutory provisions in effect at the time of Smith's conviction and sentence.

12                    Opinion of the Court                    20-12609

he belonged to the relevant category of persons barred from possessing a firearm." 139 S. Ct. at 2200.

Here, the district court did not instruct the jury on the knowledge of status element.[7] Nevertheless, Smith is not entitled to a new trial because he cannot show that the error affected his substantial rights. *Jeri*, 869 F.3d at 1259. We have held that, when reviewing whether *Rehaif* errors affected a defendant's substantial rights, courts "may consult the whole record." *United States v. Reed*, 941 F.3d 1018, 1021 (11th Cir. 2019) (quotation omitted); *United States v. Moore*, 954 F.3d 1322, 1337 (11th Cir. 2020) ("We may consult the entire record when considering the effect of an error on appellants' substantial rights."). "[I]t is particularly important for appellate courts to relive the whole trial

---

[7] Although we do not decide this issue on invited error grounds, we note that Smith arguably invited the error of which he now complains. The record demonstrates that the government added a knowledge-of-felon-status element to the superseding indictment to "avoid a potential appellate issue" should the Supreme Court hold—as it did—that knowledge of one's status is an element of a § 922(g) offense. But Smith successfully moved to have this language struck from the indictment. He also successfully moved to exclude references to his prior convictions. Both of these choices were clearly "strategic decision[s]" for purposes of trial, but now he complains that reversible error occurred because the very information he sought to have struck from the indictment was not presented to the jury. *See United States v. Jernigan*, 341 F.3d 1273, 1290 (11th Cir. 2003) (explaining that "a criminal defendant may not make an affirmative, apparently strategic decision at trial and then complain on appeal that the result of that decision constitutes reversible error").

imaginatively and not to extract from episodes in isolation abstract questions of evidence and procedure." *Reed*, 941 F.3d at 1021 (quotation omitted).

There is ample evidence in the record showing that Smith knew of his status as a convicted felon when he possessed the firearm in question. First, at trial, the government introduced a certified copy of one of Smith's convictions for possession of a firearm *by a convicted felon* in Georgia in 2010.[8] This prior conviction clearly demonstrates that it is implausible that Smith was unaware of his felon status in 2018 at the time of the underlying offense.

Second, aside from the certified conviction, Smith's PSI indicates that he had multiple felony convictions and that he served seven years in custody for a 1999 Georgia aggravated assault conviction and over a year in custody for a 2010 fleeing or attempting to elude law enforcement conviction. As we previously explained, "[m]ost people convicted of a felony know that they are

---

[8] Contrary to Smith's argument, the fact that the district court instructed the jury that it could not consider the conviction in determining whether Smith was guilty of the present felon-in-possession charge does not limit our ability to consider this information on appellate review. As part of our inquiry into whether the alleged error affected a defendant's substantial rights, we consider the whole record, including evidence that was available but not presented at trial. *See United States v. McLellan*, 958 F.3d 1110, 1119–20 (11th Cir. 2020); *Reed*, 941 F.3d at 1021. Where there is clear evidence that the defendant knew of his prohibited status, he is not entitled to a new trial. *McLellan*, 958 F.3d at 1119–20.

felons. And someone who has been convicted of felonies repeatedly is especially likely to know he is a felon." *United States v. Innocent*, 977 F.3d 1077, 1082 (11th Cir. 2020) (internal citation omitted). Thus, had the issue been contested at Smith's trial, Smith's prior felony convictions would have provided the government powerful evidence that he knew he was a felon.

Third, although not admitted during the trial, the record includes recorded phone calls between Smith and his girlfriend after Smith was arrested that demonstrated his knowledge of his status. In those calls, Smith told his girlfriend that she was "going to basically have to take one for the team, because [Smith] can't go down for this crime because [Smith was] a convicted felon."

We have held that a defendant could not show that a *Rehaif* error affected his substantial rights under similar circumstances. *See United States v. Elysee*, 993 F.3d 1309, 1346 (11th Cir. 2021) (holding that the jury could have inferred defendant's knowledge of felon status based on the defendant's stipulation that he was previously convicted of a felony coupled with a jail call in which defendant implied knowledge of his status); *Moore*, 954 F.3d at 1337–38 (holding that the record clearly established both defendants knew of their felon status where both defendants had prior federal convictions for being a felon in possession of a firearm and had served lengthy sentences); *Reed*, 941 F.3d at 1021–22 (holding that the record established that the defendant knew of his felon status because the defendant had eight prior felony convictions and admitted at sentencing that he had served 18 years

20-12609                Opinion of the Court                15

on a prior conviction). Accordingly, the district court did not abuse its discretion in denying Smith's motion for a new trial based on *Rehaif*.

## B. Closing Argument

For the first time on appeal, Smith argues that the government committed prosecutorial misconduct when it stated during closing argument that a convicted felon is never allowed to possess a firearm.[9] Smith asserts that the government misstated the law because a felon is allowed to assert a justification defense to a felon-in-possession charge. And he maintains that he was prejudiced by this misstatement of law "because he argued to the jury that he was unaware of what was happening when officers surrounded him."

The record demonstrates that, during closing argument, Smith argued that when he encountered the officers, he was at the location for a lawful purpose, believing that he was meeting someone to perform a car repair, and that he did not comply with the officers' directives because he did not recognize that they were police officers. Smith also argued to the jury that he never

---

[9] Because Smith did not object to the government's closing argument, we review for plain error only. *United States v. Frank*, 599 F.3d 1221, 1238 (11th Cir. 2010). "Plain error requires (1) an error, (2) the error is plain or obvious, and (3) the error affects the defendant's substantial rights. The plain error rule should be used sparingly, and a conviction should be reversed only if a miscarriage of justice would otherwise result." *Id.* (quotation and internal citation omitted).

possessed the firearm found under his car. Instead, he merely "parked over an item that looked like trash in an area where trash was common."

In response, the government argued that:

[w]hether the defendant knew they were law enforcement or not [was] completely irrelevant. It [did not] matter what he [knew] with regard to who was coming to encounter him that day. He can't have a firearm. Whether he thought it was law enforcement [made] no difference. He can't possess a firearm. He is a previously convicted felon. What he knew about [the identity of the officers was] not an issue that [was] relevant to whether he knowingly possessed a firearm.

Smith did not object to the government's closing argument.

Prosecutorial misconduct warrants a new trial only "if we find the remarks (1) were improper and (2) prejudiced the defendant's substantive rights. We must examine the statements in the context of the trial as a whole and assess their probable impact on the jury." *Frank*, 599 F.3d at 1238 (quotation and internal citation omitted). "When the record contains sufficient independent evidence of guilt, any error is harmless." *United States v. Rivera*, 780 F.3d 1084, 1096 (11th Cir. 2015) (quotation omitted).

Smith cannot show that any error occurred because the government did not misstate the law. The government's

20-12609              Opinion of the Court              17

statement that Smith could not possess a firearm because he was a felon is legally accurate. *See* 18 U.S.C. § 922(g)(1) ("It shall be unlawful for any person—(1) who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year . . . to . . . possess in or affecting commerce, any firearm or ammunition[.]"). While a justification defense is an affirmative defense to a § 922(g)(1) charge, *United States v. Deleveaux*, 205 F.3d 1292, 1297 (11th Cir. 2000), Smith raised no such defense. Instead, he argued throughout the trial that he never had a gun and that the gun was already in the parking lot when he unknowingly parked over it. Therefore, the government did not misstate the law or otherwise prejudice Smith's defense when it stated that Smith could not possess a firearm.

Moreover, it is well-established that "[a] prosecutor is entitled to make a fair response to defense counsel's arguments," and Smith's counsel opened the door to the government's statements during closing by arguing that the reason Smith did not comply with the officers' directives is that he did not know who they were. *Frank*, 599 F.3d at 1238. Accordingly, Smith has not demonstrated that he is entitled to relief under plain error review.

### C. Denial of Smith's counsel-related motions

Prior to sentencing, Smith's court-appointed counsel filed a motion to withdraw stating, without further elaboration, that "[a] conflict has arisen between counsel and Mr. Smith that constitutes a breakdown of their ability to communicate about the case." Smith also filed a *pro se* motion requesting appointment of new

18                    Opinion of the Court                    20-12609

counsel, asserting that his current trial counsel did not have his "best interest" in mind and "lack[ed] in many areas of being a good defense attorney."[10]

The district court held two *ex parte* hearings on the motions with only Smith and his counsel present. At the hearings, when asked to elaborate on the "breakdown in communication," counsel declined to do so, stating "I hesitate to say much more because I do think it will eventually come to a point of violating his right to confidentiality." When asked for his position, Smith stated that he did not feel that counsel had his "best interest" in mind, and he noted that he had filed numerous *pro se* motions during the trial proceedings because counsel was not taking certain actions that Smith felt needed to be taken. Smith asserted that if he had "an effective relationship with [his] counsel, then counsel should adhere to what it is that [he had] to say." Smith also emphasized that he had asked counsel (unspecified) questions that she had not been able to answer.

The district court denied the motions, explaining that it did not hear "what [it] felt rose to the level of an issue that warranted removing counsel." Additionally, the district court noted that it

---

[10] The record reflects that throughout the trial proceedings Smith filed numerous *pro se* pleadings and requested *ex parte* communications with the district court, even though the district court instructed him that he could not file *pro se* pleadings because he had counsel. In some of these *pro se* filings, Smith expressed a general disagreement with his counsel and counsel's strategy.

had reviewed a list of Smith's questions that he asserted were unanswered by counsel and did not find anything of concern or that indicated an ineffective assistance of counsel. The district court emphasized that "bringing on new counsel unfamiliar with this case at this point would do much more harm to Mr. Smith than good."

Smith argues that the district court applied the wrong standard and abused its discretion in denying his counsel's motion to withdraw and his request for appointment of new counsel for the sentencing phase. He contends that instead of evaluating whether there was "good cause" for appointing new counsel, the district court erroneously evaluated whether counsel had been ineffective. He maintains that had the district court applied the good cause standard, it would have appointed new counsel based on the clear breakdown of relationship between Smith and his trial counsel.

"Although the Sixth Amendment [of the United States Constitution] guarantees counsel, it does not grant defendants the unqualified right to counsel of their choice. An indigent criminal defendant for whom counsel has been appointed does not have a right to demand a different appointed lawyer except for good cause." *United States v. Joyner*, 899 F.3d 1199, 1205 (11th Cir. 2018) (alteration in original) (quotation and internal citation omitted). "Good cause . . . means a fundamental problem, such as a conflict of interest, a complete breakdown in communication or an irreconcilable conflict which leads to an apparently unjust verdict."

*United States v. Garey*, 540 F.3d 1253, 1263 (11th Cir. 2008) (quotation omitted).

Where, as here, the district court conducts an inquiry into the merits of a motion for the withdrawal of counsel and appointment of new counsel, we review the district court's ruling for an abuse of discretion. *United States v. Calderon*, 127 F.3d 1314, 1343 (11th Cir. 1997). "A district court abuses its discretion if it applies an incorrect legal standard, applies the law in an unreasonable or incorrect manner, follows improper procedures in making a determination, or makes findings of fact that are clearly erroneous." *United States v. Jimenez-Antunez*, 820 F.3d 1267, 1270 (11th Cir. 2016) (quotation omitted).

In determining whether the district court abused its discretion, we consider "(1) the timeliness of the motion; (2) the adequacy of the court's inquiry into [the] merits of the motion; and (3) whether the conflict was so great that it resulted in a total lack of communication between the defendant and his counsel thereby preventing an adequate defense." *Calderon*, 127 F.3d at 1343. We require a "serious breakdown in communications"—more than a client's mere displeasure with his lawyer's performance—before we can conclude that the district court abused its discretion in denying a motion to withdraw. *Id.*

Here, the district court did not abuse its discretion in concluding that there was not a "total lack of communication between the defendant and his counsel thereby preventing" effective representation at the sentencing hearing. *Joyner*, 899 F.3d

at 1205 (quoting *Calderon*, 127 F.3d at 1343). The district court held two *ex parte* hearings and provided both Smith and his counsel an opportunity to explain their respective concerns with the attorney-client relationship. Smith's counsel declined to elaborate further out of confidentiality concerns. And Smith himself referred only generally to his distrust in his counsel, disagreement with her strategy throughout the trial, and his belief that counsel did not have his "best interest" in mind. "But we have held that a defendant's general loss of confidence or trust in his counsel, standing alone, is not sufficient for good cause to demand new appointed counsel." *Id.* at 1205–06 (alterations adopted) (quotation omitted).

There was no evidence presented that there was a total lack of communication between Smith and his counsel. Rather, the record is clear that Smith was in communication with his counsel about various matters and simply did not like the answers (or, at times, no answer) he received in response to his inquiries. To be sure, Smith's statements during the *ex parte* hearings indicate that he was unhappy with his trial counsel, but there was no indication that "they were unable to communicate in [a] manner that would allow for effective representation at the sentencing hearing." *Calderon*, 127 F.3d at 1343.[11] Accordingly, the district court did not abuse its discretion in denying these motions.

---

[11] Contrary to Smith's contention, the district court did not apply the wrong standard in evaluating the motion to withdraw and request for new appointed

### D. The ACCA Enhancement

Smith argues that the district court erred in enhancing his sentence under the ACCA for several reasons, including that he does not have three qualifying predicate offenses. Smith is correct.

As noted previously, during the relevant time period, a violation of § 922(g) carried a statutory maximum of ten years' imprisonment. 18 U.S.C. § 924(a)(2) (2019). The ACCA, however, mandates a minimum 15-year sentence if a defendant convicted of a § 922(g) offense has three or more prior convictions for a "violent felony" or "a serious drug offense." *Id.* § 924(e)(1). In this case, we must determine whether Smith had three prior convictions that qualify as violent felonies. We conclude that he does not.

We begin with the language of the statute. The ACCA defines a "violent felony" as:

> any crime punishable by imprisonment for a term exceeding one year, or any act of juvenile delinquency involving the use or carrying of a firearm, knife, or destructive device that would be punishable by imprisonment for such term if committed by an adult, that—

---

counsel. "[T]he exception for good cause protects the right to effective assistance of counsel; if good cause exists, a defendant no longer has effective representation." *Joyner*, 899 F.3d at 1206 (quoting *Jimenez-Antunez*, 820 F.3d at 1271). Thus, the district court's conclusion that it did not find anything that indicated ineffective assistance of counsel was simply another way of stating that Smith failed to establish good cause.

20-12609                Opinion of the Court                23

> (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or

> (ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another[.]

18 U.S.C. § 924(e)(2)(B)(i)–(ii).   Subsection (i) contains the "elements clause," while subsection (ii) contains the "enumerated crimes" clause and the "residual clause."[12]  *United States v. Owens*, 672 F.3d 966, 968 (11th Cir. 2012).  This case involves only the elements clause.

"Under the [ACCA's] elements clause, 'use' requires active employment of physical force." *United States v. Moss*, 920 F.3d 752, 756 (11th Cir. 2019) (citing *Leocal v. Ashcroft*, 543 U.S. 1, 9 (2004)), *opinion reinstated*, 4 F.4th 1292 (11th Cir. 2021) (mem.). "[P]hysical force means *violent* force—that is, force capable of causing physical pain or injury to another person." *Id.* (quoting *Johnson v. United States*, 559 U.S. 133, 140 (2010)); *see also Stokeling v. United States*, 139 S. Ct. 544, 553 (2019) (same). Thus, to qualify as a violent felony under the ACCA's elements clause, a

---

[12] In 2015, the Supreme Court struck down the ACCA's residual clause as unconstitutionally vague. *See Johnson v. United States*, 576 U.S. 591, 597–602 (2015).  In holding that the residual clause was void for vagueness, the Court clarified that it did not call into question the validity of the elements clause or the enumerated crimes clause. *Id.* at 606.

conviction must be predicated on the *intentional* use, attempted use, or threatened use of physical force. *Moss*, 920 F.3d at 756.

We review *de novo* whether a prior conviction qualifies as a violent felony offense under the ACCA. *Id.* at 755. We must evaluate each prior conviction to determine if it qualifies as a violent felony under the ACCA's elements clause. To do so, we employ a particular framework known as the "categorical approach." *United States v. Oliver*, 962 F.3d 1311, 1316 (11th Cir. 2020). The categorical approach focuses solely on the elements of the statute of conviction, not the defendant's underlying conduct (*i.e.*, the facts). *See Taylor v. United States*, 495 U.S. 575, 600 (1990); *see also Mathis v. United States*, 579 U.S. 500, 504–06 (2016). When examining whether a conviction qualifies as a violent felony under the elements clause, the categorical approach requires that courts focus only on the statutory elements and "presume that the conviction rested upon the 'least of the acts criminalized' by the statute." *Oliver*, 962 F.3d at 1316 (quoting *Moncrieffe v. Holder*, 569 U.S. 184, 190–91 (2013)). "If the 'least of the acts criminalized' by the statute of conviction has an element requiring 'the use, attempted use, or threatened use of physical force against the person of another,' then the offense categorically qualifies as a violent felony under the ACCA's elements clause." *Id.* (quoting

20-12609                Opinion of the Court                25

*United States v. Davis*, 875 F.3d 592, 597 (11th Cir. 2017)); *see also Moss*, 920 F.3d at 756.[13]

The government argued below that Smith had five potentially qualifying felony convictions (all from Georgia): (1) a 1999 conviction for aggravated assault; (2) a 2009 conviction for aggravated assault with intent to rob; (3) a 2009 conviction for criminal attempt to commit armed robbery; (4) a 2010 conviction for obstruction of a law enforcement officer; and (5) a 2014 conviction for obstruction of a law enforcement officer. The district court found that Smith qualified as an armed career criminal, but it did not state on which convictions it relied in making that determination. Smith maintains that none of the proffered offenses qualify as predicates under the ACCA's elements clause. We examine each in turn and conclude that only two are qualifying violent felonies.

---

[13] We alter our approach, however, when the statute of conviction is "divisible," meaning the statute lists multiple, alternative elements, effectively creating multiple crimes. *Moss*, 920 F.3d at 756. When dealing with a divisible statute, we employ the modified categorical approach, which "allows us to look at a limited class of documents—known as *Shepard* documents—to determine what crime, with what elements, a defendant was convicted of." *Id.* (quotation omitted); *see also Shepard v. United States*, 544 U.S. 13, 16, 25 (2005) (specifying the documents a court may consider under the modified categorical approach). Under this approach, after looking at *Shepard* documents to determine which of the alternative statutory elements a defendant was convicted under, we then apply the categorical approach to that particular offense. *Descamps v. United States*, 570 U.S. 254, 257 (2013); *Moss*, 920 F.3d at 756.

### i.    *Obstruction of a law enforcement officer convictions (2010 and 2014)*

Smith's claim that his 2010 and 2014 Georgia convictions for obstruction of a law enforcement officer do not qualify as violent felony predicates is squarely foreclosed by binding precedent. In *United States v. Brown*, 805 F.3d 1325, 1327 (11th Cir. 2015), we held that felony obstruction of a law enforcement officer under Georgia law is categorically a violent felony for purposes of the ACCA. Although Smith maintains that *Brown* was wrongly decided, we are bound by *Brown* under the prior-panel-precedent rule. *United States v. Archer*, 531 F.3d 1347, 1352 (11th Cir. 2008) (explaining that under the prior-panel-precedent rule "a prior panel's holding is binding on all subsequent panels unless and until it is overruled or undermined to the point of abrogation by the Supreme Court or by this court sitting en banc"). Accordingly, Smith has two qualifying predicate violent felonies.

### ii.    *Aggravated assault with intent to rob conviction (2009)*

Next, we consider Smith's 2009 aggravated assault with intent to rob conviction. In Georgia, "[a] person commits the offense of simple assault when he or she either . . . (1) [a]ttempts to commit a violent injury to the person of another; or (2) [c]ommits an act which places another in reasonable apprehension of immediately receiving a violent injury." O.C.G.A. § 16-5-20(a). At the time of Smith's conviction, Georgia's aggravated assault statute

provided that a person commits the offense of aggravated assault when he commits a simple assault:

> (1) With intent to murder, to rape, or to rob;
>
> (2) With a deadly weapon or with an object, device, or instrument which, when used offensively against a person, is likely to or actually does result in serious bodily injury; or
>
> (3) A person or persons without legal justification by discharging a firearm from within a motor vehicle toward a person or persons.

O.C.G.A. § 16-5-21(a) (2009);[14] *see also Moss*, 920 F.3d at 757 (explaining that Georgia's aggravated assault statue has two essential elements—(A) simple assault as defined in O.C.G.A. § 16-5-20(a)(1) or (2), and (B) an aggravating factor listed in § 16-5-21(a)(1), (2), or (3)).

Both Georgia's simple assault and aggravated assault statutes are divisible. *Moss*, 920 F.3d at 757. Accordingly, we may employ the modified categorical approach to determine which elements formed the basis of Smith's offense of conviction. Both parties agree that "intent to rob" under § 16-5-21(a)(1) is the relevant aggravating factor. But because aggravated assault is simple assault plus an aggravating factor, we must also determine

---

[14] The Georgia legislature has since amended the statute to add a fourth aggravator that is not relevant here. *See* O.C.G.A. § 16-5-21(b)(3) (2016).

whether the aggravated assault was based on simple assault under O.C.G.A. § 16-5-20(a)(1) or (a)(2). However, because the government failed to produce any *Shepard* documents related to Smith's conviction in the district court, we cannot determine on which version of simple assault Smith's aggravated assault conviction was based. Therefore, the modified categorical approach ends here, and we must assume that Smith's aggravated assault with intent to rob conviction is based on the least of the acts criminalized under the simple assault statute—*i.e.*, "[c]ommit[ting] an act which places another in reasonable apprehension of immediately receiving a violent injury." O.C.G.A. § 16-5-20(a); *Moss*, 920 F.3d at 758; *Oliver*, 962 F.3d at 1316.

In *Moss*, however, we held that simple assault under § 16-5-20(a)(2) does not satisfy the intentional use of force requirement of the ACCA's elements clause because it can be committed with a *mens rea* of recklessness. *Id.* at 757–58. And while Smith's appeal was pending, the Supreme Court took up the issue and held that "[o]ffenses with a *mens rea* of recklessness do not qualify as violent felonies under [the] ACCA" because "[t]hey do not require . . . the active employment of force against another person." *Borden v. United States*, 141 S. Ct. 1817, 1834 (2021).

Accordingly, the only way that this conviction can qualify as a violent felony for purposes of the ACCA is if the intent to rob aggravating factor adds the necessary element of intent to use "*violent* force," or "force capable of causing physical pain or injury to another person." *Stokeling*, 139 S. Ct. at 552 (internal quotation

20-12609                Opinion of the Court                29

marks omitted).  If it does not, then the conviction does not categorically qualify as a violent felony.

In examining the "intent to rob" aggravating factor, we must consider how Georgia defines the crime of robbery.  *See Johnson v. State*, 696 S.E.2d 396, 397 (Ga. Ct. App. 2010) ("Aggravated assault with intent to rob requires the reasonable apprehension of receiving bodily injury and proof of the intent to rob the victim." (quotation omitted)).  Under Georgia law, a person commits robbery "when, with intent to commit theft, he takes property of another from the person or immediate presence of another" either "(1) [b]y use of force; (2) [b]y intimidation, by the use of threat or coercion, or by placing such person in fear of immediate serious bodily injury to himself or to another; or (3) [b]y sudden snatching."  O.C.G.A. § 16-8-40(a).  Although Georgia's robbery statute is divisible, *United States v. Harrison*, 56 F. 4th 1325, 1335–36 (11th Cir. 2023), because there are no *Shepard* documents in the record, we apply the categorical approach and we must assume Smith intended to commit the least of the robbery acts criminalized.  Sudden snatching is clearly the least of the three robbery acts criminalized.  *See* O.C.G.A. § 16-8-40(a).  Consequently, our analysis is limited to a Georgia aggravated assault conviction with intent to rob by sudden snatching.

Georgia courts have explained that although "force is implicit in sudden snatching," the only force required is "that effort necessary for the robber to transfer the property taken from the owner to his possession."  *Copeland v. State*, 754 S.E.2d 636, 639

(Ga. Ct. App. 2014) (quotation omitted); *King v. State*, 447 S.E.2d 645, 647 (Ga. Ct. App. 1994) ("Robbery by sudden snatching is where no other force is used than is necessary to obtain possession of the property from the owner, who is off his guard, and where there is no resistance by the owner or injury to his person." (quotation omitted)).  That amount of force, the Supreme Court has suggested in dicta,[15] would not satisfy the ACCA's elements clause.  *See Stokeling*, 139 S. Ct. at 555 (contrasting Florida's robbery statute—which qualifies as a violent felony under ACCA's elements clause—with its robbery by sudden snatching statute, under which it is "unnecessary to show . . . that the defendant used any amount of force beyond that effort necessary to obtain possession of the money or other property," and suggesting the latter would not satisfy the ACCA's elements clause (quotations omitted)).

Additionally, a review of Georgia cases reveals that the Court of Appeals of Georgia routinely affirms robbery by sudden snatching convictions involving substantially less force than that capable of causing physical pain or injury to another person. *See, e.g.*, *Anderson v. State*, 834 S.E.2d 369, 374 (Ga. Ct. App. 2019) (affirming robbery by sudden snatching conviction where victim's car keys fell from his pocket onto the ground and defendant

---

[15] *See Schwab v. Crosby*, 451 F.3d 1308, 1325 (11th Cir. 2006) (explaining that "there is dicta, and then there is Supreme Court dicta" and that "dicta from the Supreme Court is not something to be lightly cast aside").

grabbed the keys from the ground in the victim's presence and refused to return them); *Brown v. State*, 710 S.E.2d 674, 677–78 (Ga. Ct. App. 2011) (affirming robbery by sudden snatching conviction where defendant took the victim's wallet out of a shopping cart while the victim was several feet away and the victim yelled for defendant to stop); *Sweet v. State*, 697 S.E.2d 246, 248–49 (Ga. Ct. App. 2010) (affirming robbery by sudden snatching conviction where defendant opened cash register drawer at restaurant and took money while the cashier's back was turned but she heard the drawer open and suspected the defendant was stealing money); *King*, 447 S.E.2d at 647 (affirming robbery by sudden snatching conviction where defendant grabbed six cartons of cigarettes off a checkout counter and ran out of the store while the clerk's attention was on something else).  Thus, the force required to commit a robbery by sudden snatching in Georgia is not by necessity "violent force—that is, force capable of causing physical pain or injury to another person." *Stokeling*, 139 S. Ct. at 552 (emphasis omitted) (quotation omitted).  Therefore, the "intent to rob" element of aggravated assault—at least when that intent is based on robbery by sudden snatching—does not provide the intentional use of force requirement necessary to satisfy the ACCA's elements clause.

Accordingly, Smith's 2009 aggravated assault with intent to rob conviction does not categorically qualify as a violent felony under the ACCA's elements clause.

### iii.    Aggravated assault conviction (1999)

Smith's 1999 aggravated assault conviction does not qualify as a violent felony.  As discussed above, in *Moss*, we held that aggravated assault predicated on simple assault under § 16-5-20(a)(2) does not satisfy the intentional use of force requirement of the ACCA's elements clause because it can be committed with a *mens rea* of recklessness.  *Id.* at 757–58; *see also Borden*, 141 S. Ct. at 1825, 1834 (holding that "[o]ffenses with a *mens rea* of recklessness do not qualify as violent felonies under the ACCA" because "[t]hey do not require . . . the active employment of force against another person").  Accordingly, because aggravated assault can be predicated on a *mens rea* of recklessness, this offense does not qualify under the ACCA's elements clause.[16]

### iv.    Criminal attempt to commit armed robbery conviction (2009)

Finally, we turn to Smith's 2009 Georgia criminal attempt to commit armed robbery conviction.  Smith argues that this conviction does not qualify as a violent felony for purposes of the ACCA because (1) criminal attempt in Georgia does not include as an element the use, attempted use, or threatened use of force, and

---

[16] Both parties conceded at oral argument that, in light of the Supreme Court's intervening decision in *Borden*, this offense no longer qualifies as a violent felony.

(2) armed robbery under Georgia law does not necessarily require the use, attempted use, or threatened use of force.

Under Georgia law, "[a] person commits the offense of armed robbery when, with intent to commit theft, he or she takes property of another from the person or the immediate presence of another by use of an offensive weapon, or any replica, article, or device having the appearance of such weapon."[17]  O.C.G.A. § 16-

---

[17] The Supreme Court of Georgia has explained that "Georgia's armed robbery statute clearly contemplates that the offensive weapon be used as a concomitant to a taking which involves the use of actual force or intimidation (constructive force) against another person." *State v. Epps*, 476 S.E.2d 579, 581 (Ga. 1996) (quotation omitted).  The Court reasoned that

> [a] taking accomplished by force or intimidation is the "distinguishing characteristic" of robbery—the "gist" of the offense.  The force necessary for robbery is actual violence or intimidation exerted upon the person robbed, by operating upon his fears—the fear of injury to his person, or property, or character. Intimidation is that terror . . . likely to create an apprehension of danger, and induce a person to part with his property for the safety of his person.  Intimidation is that act by the perpetrator which puts the person robbed in fear sufficient to suspend the free exercise of his will or prevent resistance to the taking.  A threat by a perpetrator to inflict harm constitutes the requisite force or intimidation if that threat of harm induces the victim/possessor of property to relinquish possession.  However, if the person in possession of the property voluntarily yields possession of the property to the robber, that is, consents to the taking of the property, an essential element of robbery, force, is missing.

8-41(a).  An "offensive weapon" for purposes of Georgia's armed robbery statute means a "deadly weapon."  *Long v. State*, 700 S.E.2d 399, 402 (Ga. 2010).

In Georgia, a person "commits the offense of criminal attempt when, with intent to commit a specific crime, he performs any act which constitutes a substantial step toward the commission of that crime."  O.C.G.A. § 16-4-1; *see also Howell v. Georgia*, 278 S.E.2d 43, 46 (Ga. Ct. App. 1981) (explaining that criminal attempt requires (1) the intent to commit the specific crime, (2) the performance of some overt act towards the commission of that crime, and (3) a failure to complete the crime).

---

*Id.* at 580–81 (quotation and internal citations omitted). In other words, "[a]n element of armed robbery is that the taking be effectuated with force, either actual *or* constructive (intimidation)." *Wilson v. State*, 448 S.E.2d 184, 185 (Ga. 1994) (emphasis in original).  And "[w]hen the Code speaks of force, *it means actual violence*; and when it speaks of intimidation, *it still means force*; not actual and direct, but *exerted upon the person robbed*, by operating upon his fears—the fear of injury to his person, or property, or character." *Alford v. State*, 418 S.E.2d 397, 398 (Ga. Ct. App. 1992) (quotation omitted) (emphasis added).  The use of violent force required by Georgia's statute suggests that substantive Georgia armed robbery would categorically qualify as a violent felony under the ACCA's elements clause. *See Porter v. United States*, 959 F.3d 800, 802–04 (6th Cir. 2020) (holding that Georgia armed robbery categorically qualifies as a violent felony under the ACCA).  However, whether substantive Georgia armed robbery is a violent felony is not the question before us.  Smith was convicted of criminal attempt to commit armed robbery; therefore, we must decide whether the offense of criminal attempted armed robbery in Georgia categorically qualifies as a violent felony.

While Smith's appeal was pending, the Supreme Court addressed attempt crimes in *United States v. Taylor*, 596 U.S. __, 142 S. Ct. 2015 (2022). *Taylor* held that attempted Hobbs Act robbery did not qualify as a crime of violence under 18 U.S.C. § 924(c)'s elements clause—which is nearly identical to the ACCA's elements clause. *Id.* at 2020–21. In reaching its decision, the Supreme Court explained that a completed Hobbs Act robbery can be committed by means of actual or threatened use of force. *Id.* at 2020. Therefore, the government could secure a conviction for attempted Hobbs Act robbery by proving "two things: (1) [t]he defendant intended to unlawfully take or obtain personal property by means of actual or threatened force, and (2) he completed a 'substantial step' toward that end." *Id.* The Supreme Court reasoned that "whatever a substantial step requires, it does not require the government to prove that the defendant used, attempted to use, or even threatened to use force against the person or property of another." *Id.*

Here, similar to a conviction for attempted Hobbs Act robbery, a conviction for criminal attempt to commit armed robbery in Georgia may be secured by proving beyond a reasonable doubt that (1) a defendant intended to take the "property of another from the person or the immediate presence of another by use of an offense weapon, or any replica, article, or device having the appearance of such weapon," and (2) took a substantial step toward that objective. *See* O.C.G.A. §§ 16-8-41(a), 16-4-1. As discussed above, completed armed robbery in Georgia

may be committed by the threatened use of force, *Epps*, 476 S.E.2d at 580–81, which means that a conviction for criminal attempt to commit armed robbery in Georgia could be secured based on an attempt to threaten to use force. Post-*Taylor*, we have held that "where a crime may be committed by the threatened use of force, an attempt to commit that crime—*i.e.*, an attempt to threaten—falls outside the elements clause." *Alvarado-Linares v. United States*, 44 F.4th 1334, 1346 (11th Cir. 2022). Accordingly, because criminal attempt to commit armed robbery in Georgia may be committed by an attempt to threaten, it is not categorically a violent felony under the ACCA's elements clause.

Consequently, Smith has only two qualifying violent felonies, and the ACCA enhancement cannot stand.[18] Accordingly, we vacate his sentence and remand for resentencing.

### III.    Conclusion

Based on the above, we affirm Smith's conviction and the non-sentencing issues he raises. However, we vacate his sentence and remand for resentencing without the ACCA enhancement.

**AFFIRMED IN PART, VACATED IN PART, AND REMANDED FOR RESENTENCING.**

---

[18] Smith also argues that the district court erred in enhancing his sentence under the ACCA without submitting his prior convictions to the jury—a claim which he acknowledges is foreclosed by *Almendarez-Torres v. United States*, 523 U.S. 224 (1998). Because the ACCA enhancement does not apply, we do not reach this issue.